151 So.2d 762

ALABAMA NATIONAL LIFE INSURANCE COMPANY

v.

NATIONAL UNION LIFE INSURANCE COMPANY.

6 Div. 774.

Supreme Court of Alabama.

April 4, 1963.

Jas. L. Shores, Birmingham, for appellant.

R. Macey Taylor, Birmingham, and Henry Heller, Montgomery, for appellee.

LAWSON, Justice.

On or about March 21, 1956, Alabama National Life Insurance Company purchased from National Union Life Insurance Company for the sum of $10,000 a bond issued by Belin Memorial University. The bond provided, in part, as follows:

"Belin Memorial University, a nonprofit corporation organized and existing under the laws of the State of Missouri (hereinafter called the 'College'), for value received hereby promises to pay to the bearer hereof, on the 15th day of December, 1975, the sum of Ten Thousand Dollars ($10,000.00), at the office of the First National Bank of Kansas City in the City of Kansas City, Missouri, and to pay interest thereon at the rate of four per cent (4%) per annum from the date hereof; as provided in the interest coupons attached hereto; upon the surrender of said coupons. * * *"

On or about December 15, 1956, when the first interest coupon became due, Alabama National presented it for payment to the First National Bank of Kansas City. The interest coupon was not paid. The First National Bank of Kansas City advised Alabama National that it had withdrawn as trustee. The president of Alabama National, Claude E. Shell, then contacted Dr. Clyde Belin, president of Belin Memorial University, who advised Alabama National that it should contact one Charles D. Dunne, who was "in charge" of the bonds issued by the University. Alabama National's efforts to locate Charles D. Dunne were futile.

Alabama National apparently did not contact National Union concerning the bond until about July 29, 1959, when its attorneys wrote National Union a letter which, in parts, reads as follows:

"* * * You will recall, of course, the agreement made by National Union Life Insurance Company with Alabama National Life Insurance Company to repurchase from Alabama National the Ten Thousand and no/100 Dollars ($10,000.00) bond issued by Belin Memorial University, Chillicothe, Missouri. You will further recall that this bond was originally owned by National Union and was then sold to Alabama National by National Union through its duly authorized representatives, and agents and those acting for, and in concert with them.

"More than the required six (6) months having expired since the date of purchase of the bond by Alabama National, we herewith request performance by you with the repurchase provision of the above agreement.

"We have fully protected your interest in the bond, a claim on said bond having been filed by us in the Belin Memorial University Bankruptcy proceeding presently pending in Kansas City, Missouri. * * *."

On August 3, 1959, the Treasurer of National Union wrote the attorneys for Alabama National as follows:

"With respect to your letter of July 29, 1959, regarding Alabama National Life Insurance Company versus National Union Life Insurance Company, we do not recognize any liability to your client and any tendered [sic] to us will be refused."

On August 19, 1959, Alabama National instituted this suit in the Circuit Court of Jefferson County against National Union.

The complaint contains seven counts. Counts One-A, Two-A and Three-A seek to recover of the defendant the sum of $15,-000 as damages for the breach of a contract to repurchase the bond. Count Four-A, which claims the sum of $10,000, is substantially in the form prescribed by the Code for suit on an account. Title 7, § 223, Form 10, Code 1940. Count Five-A claims the same sum for money loaned the defendant by the plaintiff. It is also substantially in the form prescribed by Form 10, supra. Counts Six-A and Seven-A seek to recover of the defendant the sum of $10,-000 for breach of warranty in the sale of a negotiable instrument. These last-mentioned counts, for present purposes, may be said to be substantially in the form prescribed by Title 7, § 223, Form 24, Code 1940.

The defendant, National Union, pleaded the general issue in short by consent in the usual form.

At the conclusion of the evidence offered by the plaintiff, Alabama National, the trial court gave the general affirmative charge with hypothesis for the defendant, National Union, which it requested in writing. A verdict in favor of National Union was returned by the jury and judgment was in accord with the verdict. Alabama National's motion for new trial being overruled, it appealed to this court.

The plaintiff below, Alabama National, here insists that the trial court erred in giving the affirmative instruction in favor of the defendant, National Union.

■ In considering this question, we must review the tendencies of the evidence most favorably to plaintiff, regardless of any view we may have as to the weight of the evidence, and must follow such reasonable inferences as the jury was free to draw, not inferences which we may think the more probable. Wilson & Co. v. Clark, 259 Ala. 619, 67 So.2d 898, and cases cited.

National Union and Alabama National were both organized under the laws of Alabama. The home office of National Union was in Montgomery. The date it was licensed to do business in Alabama is not shown. Alabama National's home office was in Bessemer. It was licensed to do business in this state on July 15, 1955.

In the early part of 1956 Charles D. Dunne and his son, James E. Dunne, brought to the office of the Superintendent of Insurance of Alabama a large number of bonds having a face value of about $380,-000. The bonds were issued by Belin Memorial University and West Buechel, Kentucky. Those bonds were turned over to National Union by Charles D. Dunne. The record shows that National Union on March 17, 1956, received a contribution of Belin Memorial University bonds in the amount of $450,000.

James E. Dunne was the secretary-treasurer of National Union. Charles D. Dunne's exact position with National Union is not shown.

However, the Deputy Commissioner of Insurance of Alabama testified that Charles D. Dunne was one of the men who was "running" National Union. This witness also testified that the president of National Union told him that Charles D. Dunne "was representing" that company.

There are tendencies of the evidence to the effect that some time prior to March 21, 1956, Claude E. Shell, the president of Alabama National, agreed with some person or persons that Alabama National would purchase a $10,000 Belin bond from National Union. As far as this record discloses, the agreement was not made with an officer of National Union. Apparently the agreement was made with Leslie L. Gwaltney, the Superintendent of Insurance of the State of Alabama, and Charles D. Dunne, or one of them.

On or about March 21, 1956, Claude E. Shell, the president of Alabama National, went to the offices of National Union in

Montgomery "to consummate the purchase agreement of this $10,000 worth of Belin bonds from the National Union Life Insurance Company." He carried with him Alabama National's check in the sum of $10,000 made payable to National Union.

Upon his arrival at National Union's offices Mr. Shell advised the receptionist that he would like to see "the man in charge." He was carried to the back of the office and introduced "to some young fellow" whose name he did not remember. The position the "young fellow" held with National Union is not made to appear.

In regard to his conversation with the "young fellow" Mr. Shell testified:

"I told him I was there, of course, as a result of my conversation and agreement with Mr. Gwaltney, the Insurance Commissioner, and Mr. Pete [Charles D.] Dunne to buy $10,000.00 worth of their bonds; that Mr. Gwaltney had assured me the bonds were of good value, that he was accepting them as statutory deposits by insurance companies; and that both of them had assured me that within six months their cash position would be improved to the extent they would be able to buy these bonds back. He called this other man over and showed him the check; he called the Claims auditor over and showed him the check, and instructed him to go to processing a certain number of claims, and commented on how much relief this money would mean to them. He had somebody go get the bond, took the check, took this receipt and I signed it, I took the bond and put it in my pocket and carried it back to the Home Office at Bessemer, Alabama."

The receipt to which Mr. Shell referred reads as follows:

"March 21, 1956

"This is to certify that I have this date received from John H. Sanford acting for National Union Life Insurance Company, Belin Memorial University Bond No. 197 in the amount of $10,000.00.

/s/ Claude E. Shell
Claude Shell"

The "young fellow" with whom Mr. Shell was talking may or may not have been John H. Sanford. The receipt was not written out by the "young fellow" but was prepared by a secretary out of his presence and that of Mr. Shell. The position which John H. Sanford held with Alabama National is not made to appear.

During the course of the conversation with the "young fellow" the latter advised Mr. Shell "that they expected their shortage of cash to be alleviated within six months, and any time after that they would buy the bonds [sic] back."

Counts One-A, Two-A and Three-A all claim damages for the breach of contract by National Union to repurchase the $10,000 Belin bond after the expiration of six months from the time it was sold to the plaintiff, Alabama National.

Leslie L. Gwaltney, the Superintendent of Insurance, with whom Mr. Shell says he discussed the purchase, obviously had no authority to bind National Union.

█ Assuming, without deciding, that the evidence presented a jury question as to the right of Charles D. Dunne to bind National Union, the fact remains that the evidence does not show that he attempted to obligate National Union to repurchase. The statement attributed to him by Mr. Shell was simply that after six months National Union's cash position would be improved to the point that it "would be able to buy these bonds [sic] back." This was nothing more than an estimate as to National Union's future financial condition. It was not in the nature of a promise to repurchase.

The right of the "young fellow" with whom Mr. Shell dealt on March 21, 1956,

to bind National Union is highly questionable. For the purpose of this opinion, but for that purpose only, we will consider that he was so authorized. The statement attributed to him by Mr.' Shell to the effect that at any time after six months National Union "would buy the bonds [sic] back" is too indefinite and uncertain to constitute a contract. If this suit could be maintained for a breach of such an agreement, what would be the measure of damages? Could Alabama National retain the bond until it became due in 1975, after having collected all of the interest thereon, and then call upon National Union to repurchase the bond for its face value? If the bond increased in value, was National Union obligated to repurchase it at the increased price? Did the parties intend for the repurchase price to be the market value of the bond at the time demand for repurchase was made by Alabama National, which could be any time after six months from the date of the purchase? The answers to these questions are far from certain.

■■ The law does not favor but leans against the destruction of contracts because of uncertainty. But where contracts are so vague and indefinite in terms that the intention of the parties cannot be fairly and reasonably collected from them, the court will not undertake to give them effect. Robinson v. Bullock, 58 Ala. 618; Howard v. East Tenn., Va. & Ga. Railroad Co., 91 Ala. 268, 8 So. 868; Smith v. Chickamauga Cedar Co., 263 Ala. 245, 82 So.2d 200.

In the case of Erwin & Williams v. Erwin, 25 Ala. 236, an agreement that in consideration of the plaintiff's purchase of the defendant of a store house and a stock of dry goods, the defendant would assist him by endorsing the paper and advancing him money to carry on the business, was held void.

In Adams v. Adams, 26 Ala. 272, the promise by a father on valuable consideration that he would give a daughter "a full share of his property which was then and there worth $25,000" was declared void for uncertainty.

And in Gafford v. Proskauer & Co., 59 Ala. 264, an agreement to the effect that defendant promised plaintiff to advance him money to carry on a mercantile business and to buy cotton during the cotton season of 1873–74 was held to be so indefinite and uncertain as to be wholly void.

In Pulliam v. Schimpf, 109 Ala. 179, 19 So. 428, an alleged contract was held void for uncertainty wherein the plaintiff was to conduct in defendant's building a shooting gallery so long as the business was profitable or paid expenses, with the profits arising from the operation of the business to be divided between the plaintiff and the defendant.

In Howard v. East Tenn., Va. & Ga. Railroad Co., supra, we held void for uncertainty a contract by which the defendant railroad employed plaintiff as its land agent, at a stipulated monthly salary, "to travel and work for the road, to induce capitalists to make investments along its line, and induce excursionists to travel over the road," where no period for the continuance of the contract was specified.

In Sloss-Sheffield Steel & Iron Co. v. Payne, 186 Ala. 341, 64 So. 617, we held a contract to be too indefinite and uncertain in respect to its subject matter which required plaintiff to go upon lands of defendant and quarry therefrom and furnish to defendant "all the outcrop of said Ida ore."

In Smith v. Chickamauga Cedar Co., supra, we held too indefinite for legal enforcement a contract providing:

> "Lumberman agrees to furnish logs at such location for cutting by Contractor in such quantities as Lumberman deems feasible and economical, having regard for market conditions and availability of such logs in such vicinity."

In Grand International Brotherhood of Locomotive Engineers v. Couch, 236 Ala. 611, 614, 184 So. 173, 176, we said:

**34**

" * `*· * 'an agreement to be binding must be definite and certain,' and 'must be sufficiently definite to enable the court to determine its exact meaning and fix definitely the legal liability of the parties.' (Authorities cited)

"As a feature of that principle, it is also said· that 'where no breach of a contract could be assigned which could be compensated by any criterion of damages furnished by the contract itself, the contract is void for uncertainty,' (Authorities cited)."

We are of the opinion that no breach of contract can be assigned in the instant case which can be compensated by any criterion of damages furnished by the contract itself. We hold therefore that it is void for uncertainty.

It was for the court to determine whether under the evidence the alleged contract was void for uncertainty. Foster & Creighton Co. v. Box, 259 Ala. 474, 66 So.2d 746.

We hold that the trial court did not err in giving the general affirmative charge for the defendant as to Counts One-A, Two-A and Three-A for the reasons discussed above. As to whether a valid consideration was shown for the statement attributed to the "young fellow," we express no opinion.

There was no proof tending to sustain Count Four-A. An "account" is a general term which covers any item of indebtedness by contract, express or implied. Dees v. Self Bros., 165 Ala. 225, 51 So. 735. The evidence in this case fails to show any such enforceable contract.

Likewise, no evidence was presented tending to support Count Five-A, which seeks to recover for money loaned the defendant. There is no testimony going to show that the transaction constituted a loan. Mr. Shell, upon whose testimony Alabama National must rely, is clear to the effect that there was a sale and purchase of the Belin bond. He made no reference to a loan.

The general affirmative charge with hypothesis was properly given as to Counts Four-A and Five-A.

Counts Six-A and Seven-A, as shown above, seek to recover of the defendant on the theory that there was a breach of warranty in the sale of the Belin bond.

We find no evidence in the record to sup-. port a reasonable inference that National Union knew the Belin bond was worth less than its face value at the time of the transaction here involved.

The affirmative charge with hypothesis as to Counts Six-A and Seven-A was given without error.

Errors were assigned in connection with the trial court's action in sustaining objections to questions propounded by Alabama National to its witnesses Armstrong and Clark. These assignments are, in our opinion, not argued sufficiently to justify a detailed treatment here. Moreover, any error in those rulings would be error without injury, for the questions to which objections were sustained were designed to elicit testimony showing the agency and authority of Charles D. Dunne to bind National Union. Since the evidence fails to show any promise to repurchase made by Dunne on behalf of National Union, the matter of his agency or lack thereof is of no consequence.

The judgment of the trial court is affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.