ROBERTSON, Justice,
for the Court:
Joseph S. Howell on March 14, 1975, filed suit against Pennsylvania Life Insurance Company in the Circuit Court of Smith County, Mississippi. In his declaration, Howell alleged that on May 14, 1973, Pennsylvania Life issued to him an insurance policy providing, among other things, for the payment of $400 monthly if the insured became totally and permanently disabled as a result of sickness.
Howell further alleged that on February 21, 1974, he became totally and permanently disabled, and demanded payment of $400 per month beginning February 21, 1974. Penn Life answered, denying the allegations of the declaration and asserting that under Parts Ten and Eleven of the policy that Howell had not been continuously disabled, “so as to require continuous confinement indoors within the said policy terms.”
The case was tried on November 7, 1975, and the jury returned a verdict for Howell for $8400 (21 months at $400 per month), even though the period from February 21, 1974, to November 7, 1975, was only 2OV2 months. Penn Life appeals.
Howell was a poultry farmer, and while working in one of his chicken houses on February 21, 1974, suffered three blackout spells. He also experienced chest pains. His wife drove him to the Smith County General Hospital in Raleigh, where he was examined by Dr. John K. Wilson, a general practitioner. Howell stayed in the hospital from Thursday until Saturday afternoon when he was released to go home. He returned to see Dr. Wilson the Monday after his release and numerous times thereafter until May, 1974.
*369 On May 14, 1974, Dr. Wilson referred Howell to Dr. William Rosenblatt, a cardiovascular specialist with the Jackson Heart Clinic. Dr. Rosenblatt placed Howell in St. Dominic Hospital in Jackson, and made extensive tests. He was in St. Dominic’s from Wednesday until the following Monday. Thereafter Howell saw Dr. Rosenblatt each month through March of 1975.
Dr. Rosenblatt testified by deposition that Howell suffered from essential hypertension, that he stabilized Howell’s blood pressure within normal limits by prescribing Hygroton, a diuretic, and Enderal, a preparation which slows down the heart rate. Dr. Rosenblatt was of the opinion that Howell was not totally disabled and that he could function as a poultry farmer in a supervisory capacity. Dr. Rosenblatt testified:
“The only restrictions that I would place on him would be that he not engage in any strenuous exertion such as heavy lifting and straining and climbing.”
Howell began to go to Dr. Henry E. Irby, a general practitioner in Mize, and saw him from March, 1975, through July, 1975. Dr. Irby found that his blood pressure had become elevated and prescribed stronger medication which stabilized his blood pressure within normal limits. Dr. Irby testified that Howell was totally and permanently disabled, would probably have to take medicines the rest of his life, and would have to see a doctor at regular intervals. Howell had not seen a physician for his high blood pressure from July 1975 until the time of trial in November, 1975.
Howell based his claim for benefits on this provision of the policy:
“PART TEN CONFINING TOTAL DISABILITY BENEFITS FOR LIFE-SICKNESS
“If sickness causes continuous total disability, requires continuous confinement within doors and requires the regular and personal attendance of a physician, commencing while the policy is in force and continues uninterrupted until the expiration of the elimination period stated in the Policy Schedule, if any, the Company will pay periodically the Monthly Benefit stated in the Policy Schedule for each month (Vso of such Monthly Benefit for each day of any period less than a full month) during which such total disability continues so long as the Insured lives and is so disabled and confined.
“Confinement shall not be considered terminated by reason of transportation of the Insured, at the direction of his physician, to or from a hospital or a doctor’s office for necessary treatment.” (Emphasis added).
Penn Life contends on appeal that Howell was not totally and permanently disabled under the terms of the policy and that even if he were that he was not continuously confined within doors, and that Part Eleven of the policy applied when the insured was not confined continuously within doors. Part Eleven provides:
“PART ELEVEN TOTAL DISABILITY BENEFITS FOR NON-CONFINING SICKNESS TWELVE MONTHS “If sickness causes continuous total disability but does not require continuous confinement within doors and requires the regular and personal attendance of a physician, commencing while this policy is in force and continues uninterrupted until the expiration of the elimination period stated in the Policy Schedule, if any, or immediately following a period of total disability for which benefits were payable under Part Ten, the Company will pay periodically the Monthly Benefit stated in the Policy Schedule for each month (V&o of such Monthly Benefit for each day of any period less than a full month) during which such total disability continues, but not to exceed twelve months for any one period of sickness.” (Emphasis added). Total Disability is defined in the policy:
“TOTAL DISABILITY whenever used in this policy, means that as a result of injury or sickness, the Insured is under the regular and personal attendance of a physician, other than himself, is unable to perform each and every duty pertaining to his occupation or profession, and is not gainfully employed in any other occupa *370 tion or profession; after the Monthly Benefit for such Total Disability has been paid for twenty-four months, then thereafter during the remainder of such disability, subject to the limits of Part Four or Part Ten, Total Disability means the complete inability of the Insured to engage in any and every occupation or profession for which he is reasonably fitted by reason of education, training or experience.”
On cross-examination, Howell testified that he was not confined within doors, that he drove to Mize frequently to get the mail, would sit around Mrs. Windham’s service station and discuss politics, would frequently go over to the Hamburger House and drink coffee, that he would visit his nephew who was in the parts business in Mize, and that he would visit his friends and business establishments in Mize.
Dr. Irby testified that Howell was not confined to his home, that it would be good for him to get out and take as much exercise as he felt he could, and that the only limitation on Howell’s activities other than strenuous physical exertion was his (Howell’s) “extreme anxiety about his condition . which has within itself limitations . on any human being.”
We are of the opinion that Parts Ten and Eleven of the policy are in clear and unambiguous terms, and that as a matter of law Part Ten, which was the basis of recovery, is not applicable because there was no testimony that Howell’s sickness “requires continuous confinement within doors”.
We are of the further opinion that the jury was justified in finding from the evidence adduced that Howell was totally and permanently disabled, but that Part Eleven of the policy would be applicable, and that the payment of the monthly benefit would be limited to “twelve months for any one period of sickness.”
The judgment, therefore, should be for the recovery of $4800, rather than $8400, and judgment is entered here for that amount.
AFFIRMED AS MODIFIED.
GILLESPIE, C. J., PATTERSON, and INZER, P. JJ., and SMITH, SUGG, WALKER, BROOM and LEE, JJ., concur.