BRADLEY, Judge.
Defendant, Pennsylvania Life Insurance Company, perfected this consolidated appeal from two adverse judgments rendered by the Circuit Court of Marion County.
Plaintiff-insured, Oscar E. Green, filed two actions against his insurer, Pennsylvania Life. In the first suit (Civil Action No. Cv-77-55) plaintiff claimed that insurer owed him a sum of money under a certain provision (“Part Eleven”) of an accident and sickness insurance policy issued to insured by defendant. The second suit (Civil Action No. Cv — 77—71) was based on insurer’s alleged breach of an agreement to settle the first suit. The two actions were consolidated for trial pursuant to ARCP 42.
The trial court, sitting without a jury, rendered judgment for $4,800 in favor of plaintiff-insured, and directed that an original signed judgment be placed in the files of both actions. After its motion for new trial was denied, defendant appealed. We reverse the judgment in Civil Action No. Cv-77-55 and affirm the judgment in Civil Action No. Cv-77-71.
Plaintiff purchased an accident and sickness insurance policy from Pennsylvania Life in September 1971. Certain portions of that policy, relevant to this case, read as follows:
PART TEN CONFINING TOTAL DISABILITY BENEFITS FOR LIFE — SICKNESS
If sickness causes continuous total disability, requires continuous confinement within doors and requires the regular and personal attendance of a physician, commencing while the policy is in force . the Company will pay periodically the Monthly Benefit stated in the Policy Schedule for each month . . . during which such total disability continues so long as the Insured lives and is so disabled and confined.
PART ELEVEN TOTAL DISABILITY BENEFITS FOR NON-CONFINING SICKNESS TWELVE MONTHS
If sickness causes continuous total disability but does not require continuous confinement within doors and requires the regular and personal attendance of a physician, commencing while this policy is in force and continues uninterrupted until the expiration of the elimination period stated in the Policy Schedule, if any, or immediately following a period of total disability for which benefits were payable under Part Ten, the Company will pay periodically the Monthly Benefit stated in the Policy Schedule for each month . during which such total disability continues, but not to exceed twelve months for any one period of sickness.
*465 DEFINITIONS
ANY ONE ACCIDENT OR ANY ONE PERIOD OF SICKNESS, whenever used in this policy, means successive periods of disability which arise out of the same accident or sickness and which are separated by a period of less than six months shall be deemed to constitute any one accident or any one period of sickness. Successive periods of disability which arise out of the same accident or sickness commencing while this policy is in force and which are separated by a period of six months or more shall be deemed to constitute new periods of disability and each such new period shall be indemnified to the extent provided in this policy for any one accident or any one period of sickness.
Plaintiff entered the hospital with a heart problem in July 1974, and remained for about ten days. His sickness was diagnosed as “arteriosclerotic hypertensive heart disease with coronary insufficiency.” For this sickness defendant paid to plaintiff those benefits due under Part Ten (“confining benefits”) and Part Eleven (“non-confining benefits”) of the policy.
Plaintiff was hospitalized again in August 1976, this time for about a week. His diagnosis was as follows: (1) arteriosclerotic hypertensive disease; (2) prostatic hypertrophy and prostatitis; (3) osteoarthritis of the back with some disc degeneration; (4) arteriosclerosis with cerebral arteriosclerosis causing dizziness; (5) diabetes mellitus adult type; and (6) left inguinal hernia, large.
For this second hospitalization defendant paid to plaintiff the “confining benefits” under Part Ten of the policy. However, defendant refused to pay any further “non-confining benefits” under Part Eleven.
Defendant’s refusal was based on its contention that plaintiff’s disability, caused by heart disease and having been continuous from the date of the first hospitalization in 1974 until the present, constitutes a “single period of disability” under the definitions in the policy. Therefore, defendant, having paid to plaintiff the maximum twelve months’ benefits provided for in Part Eleven after plaintiff’s first hospitalization, was not liable for any further “non-confining” benefits claimed to be due for plaintiff’s “subsequent disability” in 1976. Based on this reasoning, defendant contends that it was entitled to judgment as a matter of law in Civil Action No. Cv-77-55 (the action on the policy).
On the other hand, plaintiff contends that the policy provisions are ambiguous, and that the trial court correctly followed the well established rule of law in Alabama which states that such ambiguities should be construed in favor of the insured, citing Southern Guaranty Insurance Co. v. Wales, 283 Ala. 493, 218 So.2d 822 (1969).
Plaintiff insists that defendant incorrectly interprets the policy’s definition of the phrase “any one period of sickness” to require that the successive periods of disability be separated by a period of at least six months of non-disability in order to be com-pensable under Part Eleven. Plaintiff argues that the phrase, as defined in the policy, requires only that the successive periods of disability be separated by a period of time (i. e. six months) in order to be compensable.
In construing an insurance policy, courts are guided by the rule that its terms and provisions must be construed as written so long as those terms and provisions are clear, unambiguous and not in conflict, and courts are not permitted to change or alter the wording of policies so as to write a new contract for the parties thereto. Cheek v. Vulcan Life & Accident Insurance Co., 52 Ala.App. 192, 290 So.2d 654, cert. den. 292 Ala. 715, 290 So.2d 658 (1973).
While we are not unmindful of the great weight given to the judgment of the trial court which heard the evidence ore tenus, we believe that the above-quoted provisions of the policy are clear and unambiguous. See Pennsylvania Life Insurance Co. v. Howell, 346 So.2d 368 (Miss.1977), wherein the Mississippi Supreme Court, in considering a policy which contained a Part Ten and a *466 Part Eleven identical to those provisions under consideration in this case, concluded that “. . . Parts Ten and Eleven of the policy are in clear and unambiguous terms.”
Plaintiff himself testified that from the date of his first hospitalization in July 1974 until the time of trial he has neither worked nor been employed, and that his activities consisted primarily of driving short distances in his car and visiting with friends. He also testified that he sees his doctor every thirty to ninety days, and that he has considered himself “as suffering from heart disease since July of 1974 through today [time of trial].”
When asked on cross-examination if there had been any period of time that he had not been disabled since the last payment of non-confining benefits (following the hospitalization in 1974), plaintiff replied, “No, I’ve been disabled.”
The inescapable conclusion to be drawn from this uncontradicted testimony is that there have been no “successive periods of disability,” but rather, as defendant contends, a single, continuous period of disability from July 1974 until the present. The evidence is subject to no reasonable inference other than that during this period plaintiff has been “totally disabled.” Our case law defines the term “total disability” as the “inability to substantially perform the duties of any substantially gainful occupation for which he is qualified by training, education or experience.” Pan Coastal Life Insurance Co. v. Malone, 40 Ala.App. 325, 114 So.2d 277, cert. den. 269 Ala. 515, 114 So.2d 283 (1959).
If not contrary to statute or public policy, insurers have the right to limit their liability, and courts have no right to add to or take from such policies. Aetna Life Insurance Co. v. Hare, 47 Ala.App. 478, 256 So.2d 904 (1972).
It follows that defendant was not liable to plaintiff following the second hospitalization under Part Eleven of the policy, because defendant had already paid out the maximum benefits due under that part following plaintiff’s initial heart attack. We hold that the trial court erred in rendering judgment for plaintiff in Civil Action No. Cv-77-55.
Civil Action No. Cv-77-71
In Civil Action No. Cv-77-71 plaintiff contended that after the filing of the suit on the policy a settlement agreement was entered into by the parties, but that defendant breached that agreement. The agreement was alleged to have been reached on August 31, 1977, during telephone negotiations between defendant’s claims supervisor and plaintiff’s attorney.
The breach complained of in plaintiff’s second action concerns the release form sent by defendant for plaintiff’s signature. The pertinent portions of the release read as follows:
RELEASE
WHEREAS, I, Oscar E. Green of Hack-leburg, Alabama, the insured named in Policy Number 3408321 issued to me by the Pennsylvania Life Insurance Company, hereafter referred to as the Company, have presented claim against the Company under said policy by reason of accident or sickness commencing on or about the second day of August, 1976; and including the following diagnoses, Arterioscle-rotic hypertensive heart disease, Diabetes Mellitis, Hypertrophy with Prostatitis, Arteriosclerosis with Cerebral Arteriosclerosis causing previous dizziness, Osteoarthritis of the Back with Disc Degeneration, and Left Inguinal Hernia, Large; and
WHEREAS, I am still disabled but at this time desire that the Company shall make a lump-sum payment to me in consideration of a full release by me of all mv rights under said policy for accrued indemnity and all indemnity which mav accrue to me in the future, and after full consideration, I have requested the Company to make such a settlement;
NOW, THEREFORE, in consideration of the premises and in further consideration of the Company making said lump-sum settlement at this time in lieu of *467 regular indemnity installments provided by said policy, and in consideration of $4,800.00 to me paid, receipt of which is hereby acknowledged, I do hereby release and forever discharge the said Company from any and all claims, actions, causes of action, suits and demands whatsoever, in law or in equity, which I now have or which I, my heirs, executors, administrators, assigns or beneficiary may hereafter have against the Company under said policy on account of said injury or sickness, or any loss which has resulted or which may hereafter result from such injury or sickness, and I definitely understand that I am hereby releasing all claims for future indemnity under said policy irrespective of the time when mv present disabili-tv ceases, and irrespective of whether it shall continue longer than now anticipated. (Emphasis supplied.)
Plaintiff refused to sign this release on the grounds that it, for all practical purposes, constituted a surrender of the policy.
Defendant contends that the judgment rendered in the suit for breach of the settlement agreement was contrary to the great weight and preponderance of the evidence.
Defendant argues on appeal the following points: first, that there was no contract created between the parties because there was no meeting of the minds as to the wording of the release; second, that the terms of the alleged verbal agreement were too uncertain to be enforceable; third, that plaintiff’s failure to sign the release and accept the check was equivalent to a rejection of defendant’s offer to settle; and fourth, that plaintiff’s attorney was without authority to settle or compromise his client’s claim in the absence of special authority from plaintiff.
We think these arguments are without merit. The testimony of both defendant’s employee and plaintiff’s attorney reveals that the following terms were agreed upon. Plaintiff was to receive $4,800 (an amount equal to the maximum twelve months non-confining benefits under Part Eleven), in exchange for dismissal of the action on the policy and the release of defendant from future liability for the six medical conditions listed as the diagnosis during plaintiff’s second hospitalization in August 1976. Plaintiff refused to surrender the policy, and no such term was included in the agreement.
The law does not favor but leans against the destruction of contracts because of uncertainty. Alabama National Life Insurance Co. v. National Union Life Insurance Co., 275 Ala. 28, 151 So.2d 762 (1963). We think the respective rights and duties under the verbal agreement were sufficiently delineated to justify the trial court’s conclusions that a binding agreement had been reached. Agreements made in the settlement of litigation are as binding on the parties thereto as any other contract. Brocato v. Brocato, Ala., 332 So.2d 722 (1976).
The testimony by both defendant’s employee and plaintiff’s attorney indicates that plaintiff had agreed to release defendant from liability only as to such future claims that might arise from the six medical conditions listed above. However, the broad wording of the release form sent to plaintiff — specifically, those provisions underlined above — could reasonably be construed as providing for a surrender of any and all claims by plaintiff under the policy. Plaintiff’s refusal to sign the release was not a failure to accept the offer of settlement, as defendant contends, but rather a non-performance of his contractual duty justified by defendant’s breach of the verbal agreement.
Defendant’s arguments regarding the authority of plaintiff’s attorney to settle his client’s claim are, at best, untimely. A party may not raise an issue for the first time on appeal. Lee Associates, Inc. v. Specialty Construction Co., Ala.Civ.App., 341 So.2d 150 (1976).
Before a reviewing court can set aside a judgment rendered by the trial court sitting without a jury, it must appear that the judgment is plainly and palpably contrary to the evidence heard by the court. Scroggins v. Alabama State Board of Pharmacy, 51 Ala.App. 104, 283 So.2d 178 (1973). We think there is sufficient evidence to support *468 the trial court’s judgment in Civil Action No. Cv-77-71.
CIVIL ACTION NO. CV-77-71 IS AFFIRMED.
CIVIL ACTION NO. CV-77-55 IS REVERSED AND THE CAUSE REMANDED FOR ENTRY OF JUDGMENT NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P. J., and HOLMES, J., concur.