On December 25, 1978 while attending a party at Charles G. Brown's house, Doug Cook, who co-owned some property in Jefferson County with his brother Ocie Cook, Jr., asked Brown's wife, Margie, a real estate sales agent, if she would be interested in selling some property that he and his brother owned. She indicated an interest in handling the sale of this property.
Later Doug Cook, Brown, and Brown's wife walked over Cook's property. During this inspection Brown asked Cook if the creek flowing through the property overflowed and caused flooding problems. Doug Cook replied either that he had no knowledge of the stream overflowing or that the property was not subject to any such problem. Brown indicated an interest in buying the property.
In late February or early March 1979 Ocie Cook, Doug Cook's brother, Brown and Mr. James Adams, an architect employed by Brown to evaluate the property for him, walked over the property and, during their walk, Brown or Adams asked Ocie Cook if the creek running through the property created flooding problems. Ocie Cook replied either that there were no flooding problems or that he had no knowledge of any such problems.
Sometime during March 1979 Brown and Ocie Cook entered into a contract prepared by Brown's wife in which Brown agreed to buy the property from Cook for $123,000. Brown gave Cook a check for $10,000 as earnest money. The contract specifically provided (1) that it was subject to the property being rezoned to light industrial within ninety days from its acceptance, and (2) that if Brown failed to fulfill his remaining obligations under the contract Cook might, at his option, retain Brown's earnest money as liquidated damages provided that Cook also cancelled the contract.
In April 1979 Brown advised Cook that he wished to rescind the contract and recover his earnest money because Cook had misrepresented to Brown that the property had *Page 1018 
no flooding problems when in fact it did have such problems. Cook refused Brown's request.
In July 1979 Brown filed suit against Cook alleging in Count One that prior to entering into the contract Cook represented to him that the property he proposed to buy from Cook had no flood or water problems and that after the execution of the contract he learned that the property was subject to flooding and a large portion of it was located in a floodplain. In Count Two plaintiff averred that the contract should be rescinded and his earnest money refunded because the property had not been rezoned to light industrial within ninety days of the acceptance of the contract.
The case was tried before the court sitting without a jury. A pertinent part of the judgment rendered by the court is as follows:
 The court is not reasonably satisfied from the evidence that plaintiff should recover under Count One of his complaint, being for mistaken misrepresentation. The court, with respect to Count Two claim, is a mixed question of law and fact, that the provisions of the contract between the parties are ambiguous, uncertain, and incomplete, and that the provision in said alleged contract for the forfeiture of all earnest money as liquidated damages is unconscionable and should not be enforced. . . .
Defendant, Cook, appeals from that part of the judgment holding that the liquidated damages provision of the contract is unconscionable and awarding plaintiff one-half of the $10,000 earnest money. Plaintiff, Brown, cross-appeals from that part of the judgment holding that the court was not satisfied from the evidence that plaintiff had proved that defendant made misrepresentations amounting to fraud and that part of the judgment awarding him only $5,000 of the $10,000 earnest money paid by him to Cook at the execution of the contract.
At the outset we note that the trial court specifically found that the terms of the contract were "ambiguous, uncertain, and incomplete." Generally speaking, our courts have not favored the destruction of contracts on the grounds that they are ambiguous, uncertain, or incomplete, see Alabama National LifeInsurance Co. v. National Union Life Insurance Co., 275 Ala. 28, 151 So.2d 762 (1963); Smith v. Chickamauga Cedar Co.,263 Ala. 245, 82 So.2d 200 (1955), and "will, if feasible, so construe [a] contract as to carry into effect the reasonable intention of the [contracting] parties if that can be ascertained." McIntyre Lumber Export Co. v. Jackson LumberCo., 165 Ala. 268, 51 So. 767 (1910). Nevertheless, a trial court should not attempt to enforce a contract whose terms are so indefinite, uncertain, and incomplete that the reasonable intentions of the contracting parties cannot be fairly and reasonably distilled from them. Alabama National Life InsuranceCo. v. National Union Life Insurance Co., supra; see also Smithv. Chickamauga Cedar Co., supra. It follows that if the circuit court in the case at bar believed that the terms of the land sales contract were so ambiguous, uncertain and incomplete that the reasonable intentions of plaintiff and defendant could not be fairly and reasonably gleaned therefrom, it should have declined to enforce any or all of the provisions of the contract and should have ordered defendant to return Brown's $10,000 earnest money payment to him. This the court did not do. Instead, it in effect found that the contract's liquidated damages provision was tantamount to a penalty and awarded defendant one-half of plaintiff's earnest money as damages for the latter's breach of the contract. Obviously, if the contract was unenforceable, Cook could not have recovered any damages from Brown for its breach, be they liquidated or not.
On the other hand, if the court concluded that the contract was enforceable, it could still find that that portion of the contract respecting liquidated damages was void as a penalty and proceed to determine the amount of damages, if any, to which defendant might be entitled by plaintiff's breach of the contract or that the liquidated *Page 1019 
damages provision was valid and award defendant all of plaintiff's earnest money for breach of the contract. SeeFederal Land Bank of New Orleans v. Bridgeforth, 233 Ala. 679,173 So. 66 (1937); Keeble v. Keeble, 85 Ala. 552, 5 So. 149
(1888); Lobman v. Sawyer, 37 Ala. App. 582, 74 So.2d 502 (1954); McCormick, Handbook on the Law of Damages § 152 (1935).
In no event, however, could the court have properly determined, as it apparently did in the instant case, that the contract was unenforceable and then say that defendant was entitled to damages for its breach. Such a judgment is obviously inconsistent and, therefore, defective. See also JimWalter Homes, Inc. v. Holman, Ala.Civ.App., 373 So.2d 869
(1979). Consequently, we reverse this aspect of the judgment and remand to the trial court for proceedings not inconsistent with this opinion.
We now take up Brown's cross-appeal from that part of the judgment wherein the trial court held that it was not satisfied from the evidence that plaintiff should recover his earnest money for the misrepresentations of the defendant.
Section 6-5-101, Code of Alabama 1975 is, in pertinent part, as follows:
 Misrepresentations of a material fact . . . if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.
Thus:
 [U]nder the statute, even though a misrepresentation be made by mistake and innocent of any intent to deceive, if it is a material fact and is acted upon with belief in its truth by the one to whom it is made, it may constitute legal fraud.
Mid-State Homes, Inc. v. Startley, Ala.Civ.App., 366 So.2d 734
(1979). A material fact is one likely "to induce action on the part of the complaining party." Jackson Co. v. Faulkner,55 Ala. App. 354, 315 So.2d 591 (1975). Although a plaintiff alleged to have been injured by a defendant's misrepresentation must have in fact acted upon it to his injury believing it to be true to maintain his action for fraud against the defendant, if he had prior knowledge of its falsity or if the circumstances surrounding the pronouncement of same would have aroused suspicion as to its validity in the mind of a reasonable person, he cannot be said to have reasonably relied upon the misrepresentation and, therefore, cannot obtain damages or other relief from defendant. See Shahan v. Brown,167 Ala. 534, 52 So. 737 (1910); Mid-State Homes, Inc. v. Holt,52 Ala. App. 415, 293 So.2d 476 (1974). Furthermore, "where the evidence has been taken ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence." Raidt v. Crane, Ala., 342 So.2d 358 (1977). Applying these well established legal principles to the case before us, we believe that the trial court's ore tenus conclusion that defendant had not practiced an actionable fraud upon plaintiff is not contrary to the great weight of the evidence and is supported by some credible evidence.
The evidence shows that the parties to this agreement walked over the subject property prior to the execution of the contract and the Cooks were asked if the property was subject to water problems, and one version of the evidence is that they replied that they had no knowledge of any flooding problems. Furthermore there is evidence in the record that after two heavy rains the creek did not go beyond its banks to flood the surrounding property. However, there is also evidence in the record that part of the property lies in a floodplain and is subject to flooding.
Whether the property is indeed subject to flooding presents a question of fact for the trier of fact to resolve. The trial court resolved the issue in favor of Cook, and we find no error in that decision. This aspect of the judgment is affirmed. *Page 1020 
AFFIRMED IN PART; REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.
WRIGHT, P.J., and HOLMES, J., concur.