**Ben NEFF, Plaintiff-Appellant,**

v.

**Nell Bilbro KEHOE, et al., Defendants-Appellees.**

**No. 82–7227**
**Non-Argument Calendar.**

United States Court of Appeals, Eleventh Circuit.

June 30, 1983.

R. Lanier Anderson, III, Circuit Judge, concurred in part and dissented in part and filed opinion.

Burns, Shumaker & Davis, Thomas E. Davis, Gadsden, Ala., for plaintiff-appellant.

Inzer, Suttle, Swann & Stivender, James C. Stivender, Roger C. Suttle, Gadsden, Ala., for defendants-appellees.

Before RONEY, VANCE and ANDERSON, Circuit Judges.

PER CURIAM:

This diversity action was instituted by Ben Neff against Nell Bilbro Kehoe as a result of misrepresentations allegedly made in connection with the sale of a coin collection. Neff argues that representations made by Kehoe were knowingly false or that Kehoe recklessly represented facts that were in fact false. In addition to claiming damages based on fraud, Neff alleged a right to recover based on breach of warranty as to the genuine character of the coins.

Neff, a resident of Texas, first learned in 1980 that Kehoe, a resident of Alabama, might be interested in selling her coin collection. Neff confirmed by telephone that the collection might be for sale. Neff requested and received a general description of each coin in the collection. Neff testified that during this conversation Kehoe stated that one coin, a 1907 Roman Numeral Twenty Dollar gold piece, was similar to a coin which the newspaper column "Ripley's Believe It or Not" had reported as having been sold at a 1974 New York City auction for $200,000. Following the conversation, Neff purchased several coin collector's magazines and contacted expert numismatists in New York City, Houston and New Orleans in an effort to obtain information and advice about the value of coins in the Kehoe collection.

Neff traveled to the Kehoe residence in Alabama and examined the coins. After his return to Texas, Neff, by telephone, offered to pay $64,000 for the collection. Kehoe stated that she felt the collection was worth more and should be valued at between $75,000 and $100,000. Neff increased his offer to $74,000 and Kehoe accepted. Neff again traveled to Alabama, paid the $74,000 by two cashier's checks and received the collection.

Upon returning to Texas, Neff had the coins examined by the United States Department of the Treasury. The Department informed Neff by letter that two of the coins, including the Roman Numeral, were counterfeit. Neff filed this action in federal district court. At the conclusion of the evidence by both sides, the district court directed a verdict for defendant Kehoe as to all issues in the case.

Although this is a diversity case, the propriety of the directed verdict is governed by federal law. *New England Merchants' National Bank v. Rosenfield,* 679 F.2d 467, 473 (5th Cir.1982) (Unit B); *King v. Ford Motor Co.,* 597 F.2d 436, 439 (5th Cir.1979). Because a directed verdict decides contested substantive issues as matters of law, the same standard of review is applied by this court as by the district court. *J & H Auto Trim Co. v. Bellefonte Insurance Co.,* 677 F.2d 1365, 1368 (11th Cir.1982). In determining whether a party's evidence is sufficient to withstand a directed verdict motion, the court must apply the principles articulated in *Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir.1969), made binding on this court in *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc). Courts view all the evidence, together with all logical inferences flowing from the evidence, in the light most favorable to the non-moving party:

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions,

the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Boeing,* 411 F.2d at 374–75. *Accord Kaye v. Pawnee Construction Co.,* 680 F.2d 1360, 1364 (11th Cir.1982); *Maxey v. Freightliner Corp.,* 665 F.2d 1367, 1371 (5th Cir.1982) (en banc). Applying the *Boeing* standard to the present case, we reverse the directed verdict on both the fraud claim and the breach of warranty claim.

### (1)

### Fraud

■ While the directed verdict standard is drawn from federal law, Alabama law governs the merits of the fraud and breach of warranty claims in this diversity case. In *International Resorts, Inc. v. Lambert,* 350 So.2d 391, 394 (Ala.1977), the Alabama Supreme Court delineated the elements necessary to sustain a cause of action based on fraud:

Regardless of whether the representations were made wilfully, recklessly or mistakenly, it has been held that there must be (1) a false representation, (2) the false representation must concern a material existing fact, (3) the plaintiff must rely upon that false representation, and (4) the plaintiff must be damaged as a proximate result.

*See also Winn Dixie Montgomery, Inc. v. Henderson,* 395 So.2d 475 (Ala.1981).

■ Neff has presented sufficient evidence as to all of the requisite *Lambert* factors. He adamantly maintained at trial that Kehoe had represented the coins as genuine:

Q. Did she make any statements to you at that time with reference to the authenticity or genuineness of the coins?

A. She repeated again that they were genuine, it was a genuine coin collection. Her husband was a coin collector, and, you know, they were genuine coins.

Q. You said she made that statement again. Had she made it before you came to Gadsden?

A. She made it on the phone the day I called her and she gave me the listing.

. . . . .

Q. Now, on the second occasion that you came to Gadsden, the trip where you purchased the coins, did she make any statements to you at that time concerning the authenticity or the genuineness of the coins?

A. Yes, sir.

Q. What did she say?

A. She said that they were genuine coins and authentic. I mean, what else?

. . . . .

A. She told me that she had one that was just like the one that was sold in New York.

Q. Did she say it was just like or appeared to be like it?

A. She said it was just like it. She said it was a genuine coin that looked like the one that sold in New York for two hundred thousand dollars.

Kehoe denied having made representations of genuineness, but the jury might reasonably have credited the testimony of Neff rather than that of Kehoe. The alleged representations clearly concerned a fact material to the transaction contemplated by the parties. It is true that the record does not demonstrate that Kehoe acted willfully with an intent to deceive. But while intent to deceive is an indispensible element of fraud, under Alabama law the requisite intent may be inferred from a showing that the representations were made recklessly or mistakenly. *Winn-Dixie Montgomery,* 395 So.2d at 476; *Lambert,* 350 So.2d at 394.

Kehoe contends that Neff failed to present sufficient evidence of reliance. We agree insofar as the alleged representations related to the value of genuine coins, but disagree insofar as they related to the underlying matter of genuineness. Neff's own trial testimony demonstrated that he did not rely, and could not reasonably have relied, upon any arguably false representations as to the coins' *value* made by Kehoe. The evidence shows that Neff formed an independent judgment on value based on his personal research and inspection of the Kehoe coins. Although "the mere circumstance of making an examination" does not preclude a claim of fraud, the law in Alabama is that if a purchaser actually makes his own investigation of the quality of the articles purchased and "acts on his own judgment, there can be no defense based on fraud." *Myers v. Moody,* 259 Ala. 638, 67 So.2d 891, 892 (Ala.1953). Neff examined the coins at length during his two trips to Alabama, and both times he was aided by magnifying glass and resource books. Neff also consulted with several experts in the field before completing the transaction. Further, any subjective reliance by Neff on Kehoe's representations as to the coins' value would have been unreasonable. Neff conceded that Kehoe had told him that she was not knowledgeable in the gold coin collection business:

> THE COURT: Did she indicate to you that she wasn't very knowledgeable about gold coins on that first trip that you made to Gadsden?
>
> THE WITNESS: In general terms, yes, sir.
>
> THE COURT: And that she was not an expert with regard to gold coins?
>
> THE WITNESS: Yes, sir.

Neff was aware that Kehoe had obtained the coins from her late husband's estate and that Kehoe herself had never purchased or dealt with gold coins and was not knowledgeable in the coin business.

Although the evidence was insufficient to support a jury finding that Neff relied upon representations of the value of the coins if genuine, a jury might have found that Neff relied upon representations of genuineness. The jury could reasonably have concluded that the scope of Neff's investigation covered only value and not authenticity. The jury could have found that Kehoe recklessly or mistakenly represented the coins to be genuine and that Neff relied to his detriment on such representations. Based on the evidence discussed above, we find that Neff has made a prima facie showing of reliance requiring submission of the issue to the jury.

The final element under the Alabama fraud law is damages. Neff had the burden of proving that damages to him flowed from Kehoe's alleged misrepresentation. At the close of testimony by both sides, there was no testimony as to the difference in the value of the coin collection as allegedly represented and its actual value after the counterfeit coins were taken into account. On direct examination, counsel repeatedly asked Neff his opinion of the value of the coin collection that he had purchased. Neff was not tendered as an expert; rather, his lay opinion was based upon coin collector publications, upon appraisals he received from various collectors and upon his own experience as owner of the collection. In sustaining Kehoe's objection to this testimony, the district court rejected Neff's contention that the owner of property is entitled to give an opinion of its value when the owner has had opportunity to form a correct opinion.

Accurate valuation of coins requires a fair amount of technical proficiency and Neff did not assert otherwise. He testified that such estimates are "based on the condition of the coin, and only an expert can tell" and that evaluating the "exact amount is really a science by real experts upon precise examination." The court, in sustaining Kehoe's objection to the evidence, observed:

> Well, I recognize that Mr. Neff has an opinion as to the alleged value of the coin collection, but we're dealing here with a specialized situation which is different from automobiles and other things that are regularly and customarily dealt with.

I don't think that the rule of evidence is the same, and I sustain the objection as to any specific figure that this witness has an opinion about. There is a way to establish the value of a coin collection, I think, but I don't much believe it's this way. I sustain the objection.

■ Cases binding on this court have held that "an owner of property is competent to testify regarding its value." *Dietz v. Consolidated Oil & Gas,* 643 F.2d 1088, 1094 (5th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 513, 70 L.Ed.2d 385 (1981); *Kestenbaum v. Falstaff Brewing Corp.,* 514 F.2d 690, 698 (5th Cir.1975), *modified on other grounds en banc,* 575 F.2d 464 (5th Cir.1978), *cert. denied,* 424 U.S. 943, 96 S.Ct. 1412, 47 L.Ed.2d 349 (1979). *Accord Justice v. Pennzoil Co.,* 598 F.2d 1339, 1344 (4th Cir.), *cert. denied,* 444 U.S. 967, 100 S.Ct. 457, 62 L.Ed.2d 380 (1979). Though such testimony may be "self-serving and unsupported by other evidence," *J & H Auto Trim,* 677 F.2d at 1369, it is "subject to attack through cross-examination or independent evidence refuting the owner's estimate." *Kestenbaum,* 514 F.2d at 699. We conclude that at any relitigation of this case, Neff should be permitted to give his opinion of the value of the coin collection.

## (2)

### Breach of Express Warranty

Neff contended that Kehoe represented the coins to be genuine and that such representation constituted a breach of express warranty under the Alabama Uniform Commercial Code. The Code of Alabama defines express warranty at section 7–2–313:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

Ala.Code § 7–2–313 (1975). No reliance need be shown. *See id.* (official comment 3).

Appellant argues that Kehoe's statements regarding genuineness and authenticity were more than mere expressions of opinion. Neff asserts that regardless of Kehoe's lack of expertise in the coin trade, she affirmatively asserted the coins to be genuine and authentic. Neff submits that the issue of whether Kehoe warranted the coins was an issue of fact for the jury and that resolution of that disputed fact question required credibility choices especially within the jury's providence. We agree.

■ Substantial evidence supports Neff's contention. Kehoe testified that she never represented the Roman Numeral coin as being genuine: "I did not say it was genuine. I said I felt it was genuine ... I felt like my husband wouldn't have bought something that wasn't. He was an honest man." Despite some uncertainty about Kehoe's "exact words," Neff testified positively and consistently, on direct and cross-examination, that Kehoe had told him that the coins were "genuine" and that the Roman Numeral coin was "just like" the one reported in "Ripley's Believe It or Not." The question of whether statements made by Kehoe were affirmations of fact is an issue of fact, resolution of which hinges on the credibility of witnesses Neff and Kehoe. The credibility of witnesses is to be evaluated by the jury, not by the judge on directed

verdict. *See Maxey,* 665 F.2d at 1371; *Boeing,* 411 F.2d at 375. We thus reverse the district court's directed verdict on the issue of breach of warranty.[1]

REVERSED and REMANDED.

R. LANIER ANDERSON, III, Circuit Judge, concurring in part and dissenting in part:

I reluctantly concur in the majority's reversal of the directed verdict on the breach of warranty claim, but I dissent from that portion of the majority opinion which reverses the directed verdict on the fraud claim.

With respect to the fraud claim, the majority opinion indicates that the district court should not have directed a verdict because the jury "could have found that Kehoe recklessly or mistakenly represented the coins to be genuine and that Neff relied to his detriment on such representations." At 643. The majority opinion fails to discuss whether the jury could have found that Neff's reliance was reasonable.

Under Alabama law, a plaintiff must have *reasonably* relied on a false representation in order to maintain an action for

fraud. *See, e.g., Bedwell Lumber Co. v. T & T Corp.,* 386 So.2d 413, 415 (Ala.1980) (recognizing "the basic legal proposition that the representee's reliance must be reasonable under the circumstances"); *Cook v. Brown,* 393 So.2d 1016, 1019 (Ala.Civ.App. 1981) (stating that when plaintiff "cannot be said to have reasonably relied upon the misrepresentation ... [he] cannot obtain damages or other relief from defendant"). In this case, Neff had some familiarity with coin collecting and was given several opportunities to carefully examine the coins before he purchased them. More importantly, it is undisputed that Neff knew that the seller, Kehoe, was not an experienced coin collector and had no experience in evaluating the genuineness of coins. Neff also knew that Kehoe had not personally purchased the coins, but merely had received them from the estate of her late husband. Under such circumstances, I agree with the district judge that no reasonable jury could find that Neff *reasonably* relied on Kehoe's statements that the coins were genuine.[1]

With respect to the claim for breach of express warranty, I reluctantly concur in the reversal of the directed verdict. I believe the most reasonable interpretation of all of the evidence, viewed in the light most favorable to Neff, is that Kehoe's state-

---

1. Kehoe asserts that the bill of sale, drafted by Neff, excludes by implication any prior or contemporaneous oral express warranty. The district court did not determine whether the document was merely a confirmation of the transaction or whether it was a contract of sale intended to be a complete and final expression of the parties' agreement excluding any oral warranties of genuineness and authenticity. Such determination would not have been proper on this motion for directed verdict. The official comment to the express warranty provision of the Alabama UCC states that "any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact." Alabama Code § 7-2-313 (1975) (official Comment 3).

1. Arguably, the jury could have found that Neff's reliance on Kehoe's representation was reasonable because Kehoe's late husband was a serious coin collector. In other words, the jury could have inferred that when Kehoe said the coins were genuine, she actually meant, and Neff reasonably understood her to mean, that she believed the coins were genuine because her late husband had coin collecting experience

and would not have purchased anything except genuine coins. In fact, Neff's reliance apparently was based on this construction of Kehoe's statement, because when the court asked Neff whether Kehoe had ever claimed to be an expert on gold coins, he responded: "No, but she indicated to me that her husband was an extensive coin collector, which from the evidence he was, *and so I just assumed* that all of those coins were definitely authentic." Record on Appeal, vol. 2, at 110 (emphasis added). Even if we assume that Neff reasonably could have relied on Kehoe's statement as construed, however, Neff cannot prevail. Nothing in the record indicates that the statement, as construed, was false. Kehoe's late husband apparently was a serious and knowledgeable coin collector, and Kehoe had no reason to believe that her late husband had purchased anything except genuine coins. Thus, although the jury might have found reasonable reliance inferentially, the required inference negates another element of Neff's prima facie case for fraud, the falsity of the representation, and a directed verdict still would be proper.

ments regarding the genuineness of the coins were merely an expression of opinion based on her knowledge of her late husband's coin collecting experience.[2] Nevertheless, because I am unable to conclude that no reasonable jury could reach the contrary conclusion, finding that Kehoe's statements were affirmations of fact which created an express warranty, I concur in the reversal of the directed verdict on this issue.[3]

---

2. Neff's own testimony supports this interpretation. For example, when Neff was asked on direct examination whether Kehoe had made any statements regarding the authenticity of the coins, he responded: "She repeated again that they were genuine, it was a genuine coin collection. Her husband was a coin collector and, you know, they were genuine coins." *See* Record on Appeal, vol. 2, at 17. *See also* the portion of Neff's testimony quoted in note 1 *supra*.

3. My reluctance to join the majority opinion is based primarily on my belief that the warranty issue is close factually. As noted in the text, I have difficulty concluding, on this record, that Kehoe's statements created an express warranty. Thus, although the district judge should have let this issue go to the jury, particularly after all of the evidence had been presented, it may well have been within the district judge's discretion to grant a new trial, on the ground that the verdict was against the great weight of the evidence, if the jury had found in Neff's favor. Moreover, in the absence of any Alabama decisions on the issue, I am not as confident as the majority that reliance plays no role in express warranty cases under UCC § 2-313. *Compare* at 644 (flatly stating that "[n]o reliance need be shown"), *with* J. White & R. Summers, Uniform Commercial Code § 9-4, at 335 n. 36 (2d ed. 1980) (arguing that "once the seller presents evidence of nonreliance, it is doubtful that the buyer can get to the jury on proof of seller's affirmation alone"); *Hagenbuch v. Snap-On Tools Corp.*, 339 F.Supp. 676, 680 (D.N.H.1972) ("In order to find an express warranty, it must be shown that the representations of fact describing the hammer were made 'part of the basis of the bargain.' In other words, plaintiff has the burden of showing that he acted on the basis of the representation."). *See generally* Note, *Basis of the Bargain—What Role Reliance?*, 34 U.Pitt.L.Rev. 145 (1972).

