[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11836

_____

D.C. Docket No. 5:16-cv-00178-JSM-PRL


SABAL TRAIL TRANSMISSION, LLC,

                                             Plaintiff - Appellant,


versus


3.921 ACRES OF LAND IN LAKE COUNTY FLORIDA,
SUNDERMAN GROVES, INC,
UNKNOWN OWNERS, IF ANY,

                                             Defendants - Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 22, 2020)

Before WILLIAM PRYOR and JILL PRYOR, Circuit Judges, and ROBRENO,[*] District Judge.

JILL PRYOR, Circuit Judge:

The federal Natural Gas Act ("NGA"), 15 U.S.C. §§ 717-717z, allows natural gas companies to acquire through eminent domain private property on which to construct and operate natural gas pipelines. *See* 15 U.S.C. § 717f(h). After plaintiff Sabal Trail Transmission, LLC, received approval from the Federal Energy Regulatory Commission ("FERC") to construct an underground natural gas pipeline from Alabama to Florida, it needed to acquire easements to build and operate the pipeline across property owned by various landowners.

Sabal Trail brought this condemnation action to acquire permanent and temporary easements that would allow it to build and operate a portion of the pipeline on property owned by defendant Sunderman Groves, Inc. Sunderman Groves stipulated in the action that Sabal Trail was entitled to the easements, leaving the appropriate amount of compensation as the only remaining issue. At trial, a jury awarded Sunderman Groves $309,500 as compensation for the easements. The district court then entered a final judgment, awarding Sunderman Groves $309,500 and providing that as part of the compensation award,

---

[*] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

2

Sunderman Groves was entitled to recover its attorney's fees and costs in an amount to be set by the court.

Sabal Trail raises two separate issues on appeal. First, it argues that it is entitled to a new trial because the district court abused its discretion in allowing Jan Sunderman, who owned Sunderman Groves, to give speculative lay opinion testimony about the remaining property's value after the pipeline was built. Second, Sabal Trail challenges the district court's decision to award Sunderman Groves its attorney's fees and costs. We conclude that the district court did not abuse its discretion in allowing Sunderman to testify about the value of the property and that we lack jurisdiction to review whether Sunderman Groves is entitled to attorney's fees and costs. Accordingly, we affirm in part and dismiss in part.

## I.    FACTUAL BACKGROUND

This case arises from Sabal Trail's construction of a 500-plus mile underground pipeline to transport natural gas from Alabama to Florida. FERC issued Sabal Trail a certificate of public convenience and necessity authorizing the construction and operation of the pipeline. The certificate authorized Sabal Trail to build the pipeline along a route where Sabal Trail held existing rights-of-way to much of the land needed for construction of the pipeline. For the remaining more than 200 miles of the route, Sabal Trail needed to acquire easements from

3

landowners to build the pipeline across the landowners' properties. Although Sabal Trail was able to negotiate agreements with most landowners to purchase the necessary easements, some landowners would not agree.

A portion of the pipeline's route ran across property owned by Sunderman Groves, a company owned by Charles and Jan Sunderman, who did not agree to allow Sabal Trail to purchase easements on their company's property. Sunderman Groves owns approximately 500 acres of land spread across various parcels in Lake County, Florida. Sabal Trail sought to lay approximately 1,335 feet of pipeline in a diagonal path across a 40-acre parcel of Sunderman Groves's property.

To build the pipeline across the parcel, Sabal Trail sought a permanent easement that would allow it to install and maintain the underground pipeline and related equipment. The permanent easement also would guarantee Sabal Trail the right to bar the Sundermans and any successive owner of the property from building any structure in the permanent easement area, allow Sabal Trail to remove any vegetation in the permanent easement area, and permit Sabal Trail to enter the remainder of the parcel to access the pipeline and related equipment. The total area Sabal Trail sought to condemn for the permanent easement was 1.535 acres. In addition, Sabal Trail also sought a larger, temporary easement to allow for the construction of the pipeline; the temporary easement covered 2.386 acres.

4

When Sunderman Groves would not agree to sell the easements, Sabal Trail sought to obtain the easements by exercising the power of eminent domain. *See* 15 U.S.C. § 717f(h) (allowing the holder of a certificate of public convenience and necessity to exercise the right of eminent domain to obtain an easement to construct and operate a natural gas pipeline). Pursuant to the NGA, Sabal Trail filed this condemnation action against Sunderman Groves.[1] Sunderman Groves stipulated that Sabal Trail was entitled to the easements under the NGA. The parties continued to litigate about the amount of compensation Sabal Trail would pay Sunderman Groves for the easements. Because the parties could not agree on the amount, the district court held a jury trial on this issue.[2]

During the course of a four-day trial, the jury heard evidence about the value of the land affected by the pipeline and the appropriate amount of compensation for the taking of the land. The parties agreed that Sunderman Groves was entitled to compensation for the value of the land taken for the permanent easement, the value of the land taken for the temporary easement, and severance damages to

---

[1] Sabal Trail filed other similar condemnation actions to obtain easements in district courts in the Middle District of Alabama, Northern District of Florida, Middle District of Florida, and Middle District of Georgia.

[2] By the time of the trial, Sabal Trail had completed construction of the section of pipeline crossing Sunderman Groves's property.

5

compensate Sunderman Groves for the diminution in value of the remainder of the parcel after the condemnation.[3] The parties disagreed about each of these values.

At trial, both Sabal Trail and Sunderman Groves presented expert testimony from real estate appraisers. Sabal Trail's appraiser, Richard Parham, opined that the total compensation owed to Sunderman Groves for the condemnation was $56,800: $8,100 for the value of the land taken for the permanent easement, $5,000 for the value of the land taken for the temporary easement, and $43,700 for severance damages. To calculate the severance damages, Parham compared the values of the remainder of the 40-acre parcel before and after the taking. In conducting this valuation, he determined that the parcel's highest and best use was rural residential development with the parcel subdivided into two lots. Parham explained that the parcel, which consisted of approximately 26.5 acres of uplands, could be subdivided into no more than two lots because local zoning regulations required that each lot have at least 10 acres of uplands. After considering recent sales of similar lots in the area, Parham opined that prior to the condemnation the parcel was worth $7,000 per acre of uplands.

Parham then considered the value of the parcel after the condemnation. He found that the value of the remainder of the parcel had been reduced by the

---

[3] *See* Damages, *Black's Law Dictionary* (11th ed. 2019) (defining severance damages as "compensation awarded to a landowner for the loss in value of the tract that remains after a partial taking of the land").

permanent easement because the easement bifurcated the parcel into two separate

pieces, but that no further reduction due to any stigma or fear associated with a

natural gas pipeline running across the parcel was warranted.  As a result, he

determined that the property still could be subdivided into two lots for rural

residential development.  Based on his analysis, Parham concluded that the

presence of the pipeline reduced the value of the remainder by 25% to $5,250 per

upland acre.[4]  Based on the size of the uplands portion of the parcel, Parham

opined that Sunderman Groves was entitled to $43,700 in severance damages as

compensation for the reduction in value of the remainder of the parcel.

Sunderman Groves's appraiser, Matthew Ray, testified that the total

compensation due for the condemnation was $315,039:  $26,249 for the permanent

easement, $15,013 for the temporary easement, and $273,777 for severance

damages.  To calculate severance damages, Ray, like Parham, compared the values

of the remainder of the parcel before and after the condemnation.  Ray agreed with

Parham that the highest and best use of the parcel was as rural residential

development, but he believed that the parcel could be subdivided into three

residential lots.  Although the local land-use code generally required a subdivided

lot to have at least 10 acres of uplands, Ray explained that an exception in the code

---

[4] Parham found that there was no change to the value of the 12.6 acres of the parcel containing wetlands.

permitted Sunderman Groves to subdivide the parcel into three lots, with two lots each containing 10 acres of uplands and one lot containing six acres of uplands plus wetlands. Based on his review of recent land sales, Ray testified that before the taking the parcel was worth $18,000 per upland acre.

Ray then considered the value of the parcel after the condemnation. His analysis showed that purchasers paid less for property when there was an underground natural gas pipeline crossing the property. Ray explained that prospective purchasers paid less for such property because the pipeline bifurcated the property, the easement limited the owner's ability to keep people off the land and diminished the owner's privacy, and purchasers had concerns about the potential hazards associated with a pipeline carrying a significant volume of natural gas running through the property. Based on his analysis, Ray determined that the pipeline reduced the value of each upland acre in the remainder of the parcel by 60% to $7,200 per acre. Based on the size of the upland portion of the remainder of the parcel, Ray opined that Sunderman Groves was entitled to $273,777 in severance damages as compensation for the reduction in value.

Jan Sunderman also testified about the effect that the pipeline had on the value of the remainder of the parcel. She explained that for approximately 90 years the Sunderman family had owned land in Lake County. The family originally owned approximately 4,000 acres of land, which it used for citrus

8

farming.  Eventually, Sunderman Groves came to own 860 acres of the family's land, including the 40-acre parcel at issue here.  Although Sunderman Groves had used the land for citrus farming, after a series of freezes destroyed its citrus crops, it ceased its citrus farming operations.  Sunderman Groves continued to hold the land for investment.  Occasionally, it sold off lots to be developed for rural residential use.  Between 1990 and 2016, Sunderman Groves sold 25 lots for rural residential development.

Sunderman testified that before Sabal Trail built the pipeline, Sunderman Groves had planned to subdivide the 40-acre parcel into three lots for residential development.  The subdivision would have created two 10-acre lots consisting of uplands and a third larger lot that would include the remaining uplands plus wetlands.  But Sunderman Groves had not previously subdivided the parcel or tried to sell the lots because the parcel was the most beautiful land it owned, and Sunderman expected that its value would appreciate the most of all of Sunderman Groves's holdings.  Before the pipeline was built, she opined, the parcel was worth $18,000 per acre of uplands, meaning the upland portion of the parcel had a total value of approximately $477,000.

Sunderman testified that the pipeline had reduced the value of the parcel. When she was asked to opine about how the pipeline had reduced the value, Sabal Trail objected, arguing that the question called for speculation.  The court allowed

9

her to answer.  Sunderman testified that the pipeline had thwarted her plan to subdivide the parcel into three lots.  She explained that if she subdivided the property as planned, the pipeline would run diagonally across the two 10 acre lots. With the pipeline's presence, she opined, these two lots would be "definitely undesirable" for rural residential development and could be used only for agriculture.  Doc. 130 at 100.[5]  As agricultural land, she testified, each lot was worth $35,000 or $3,500 per acre, meaning the two lots had decreased in value by more than 80%.

She testified the pipeline reduced the value of the third planned lot as well. If she subdivided the property as planned, the pipeline would run across only a small corner of this lot.  She opined that it would have been possible to sell this lot for residential development.  But given the presence of the pipeline, the land would have to be sold at a reduced price because a buyer would be willing to pay only $70,000 for the lot, meaning that the lot was worth approximately $10,769 per upland acre and its value had decreased by approximately 35% due to the pipeline. To compensate Sunderman Groves for the taking of land for the permanent and temporary easements and the severance damages, Sunderman asked the jury to award $360,000 in total compensation.

---

[5] Citations in the form "Doc. #" refer to the numbered entries on the district court's docket.

10

When asked about the basis for her opinion, Sunderman explained to the jury that her opinion was based on her prior experience when she sold 25 other lots owned by Sunderman Groves for rural residential development. She recounted that to sell lots in the past, she had usually posted a sign on the road advertising land for sale. When a prospective purchaser called about the land, Sunderman would invite the person to her home, discuss with him what he was looking for, and show him a few lots that Sunderman Groves had available for sale. From these conversations, she learned that prospective purchasers generally were interested in buying a piece of land larger than what they could have in town, wanted to enjoy nature, and were looking for privacy. She also learned that prospective purchasers wanted freedom from homeowners' associations and deeded restrictions and did not want others telling them what they could do with their land.

The jury found that Sunderman Groves was entitled to $309,500 in compensation for the condemnation. The jury awarded $17,500 for the value of the land taken for the permanent easement, $10,000 for the value of the land taken for the temporary easement, and $282,000 for severance damages to compensate for the diminution in value of the remainder of the parcel. Based on the jury's verdict, the district court entered a final judgment awarding Sunderman Groves $309,500 in compensation. The judgment also provided that the total

compensation due to Sunderman Groves would include attorney's fees and costs and directed Sunderman Groves to file a motion so that the court could set the amount of fees and costs.

Sabal Trail moved for a new trial, arguing that the court should have excluded Sunderman's opinion testimony about the value of the land after the pipeline was built because her testimony was speculative. The court denied the motion, explaining that a property owner generally is permitted to testify about the value of her land and that Sunderman's testimony was not speculative because it was based on her personal knowledge and experience.

Sabal Trail separately filed a motion for relief from judgment challenging the district court's conclusion that Sunderman Groves was entitled to attorney's fees and costs. Sabal Trail argued that under the NGA, a property owner is not entitled to recover the attorney's fees and litigation expenses it incurs in litigating a condemnation action. The court denied the motion on the ground that Sabal Trail had failed to identify a manifest error of law in the court's conclusion that the NGA permitted Sunderman Groves to recover its attorney's fees and costs. Before the district court set the amount of the attorney's fees and costs award, Sabal Trail filed a notice of appeal.

## II.    DISCUSSION

We divide our discussion into two parts.  First, we consider whether the district court abused its discretion when it permitted Jan Sunderman to testify about the value of the remainder of the parcel after the pipeline was installed.  Second, we address whether we have appellate jurisdiction to review the district court's determination that Sunderman Groves is entitled to attorney's fees and costs.

### A.    The District Court Did Not Abuse Its Discretion in Allowing Sunderman to Offer Lay Opinion Testimony.

We begin with Sabal Trail's argument that it deserves a new trial because the district court erred in permitting Sunderman to testify about how the pipeline affected the value of the parcel.  We review for abuse of discretion a district court's evidentiary rulings, including a decision to admit lay opinion testimony.  *See Williams v. Mosaic Fertilizer, LLC*, 889 F.3d 1239, 1250 (11th Cir. 2018).  We cannot say that the district court abused its discretion here.

The Federal Rules of Evidence address when a lay witness may offer opinion testimony.  Rule 701 requires that lay opinion testimony be "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  In addition, the lay witness's opinion must be derived from her

13

personal knowledge or experience. *See* Fed. R. Evid. 701 advisory committee's note to 2000 amendment. As a general rule, "an owner of property is competent to testify regarding its value." *Neff v. Kehoe*, 708 F.2d 639, 644 (11th Cir. 1983) (internal quotation marks omitted).

Given this general rule, we conclude that Sunderman, as one of the two owners of Sunderman Groves, was competent to testify about the value of its property. Sabal Trail nonetheless argues that the district court should have excluded Sunderman's testimony about the value of the parcel after the pipeline was built because she had no prior experience selling property encumbered by a pipeline and thus lacked personal knowledge about whether the pipeline diminished the parcel's value.

Sabal Trail contends that our decision in *Williams* supports its position that Sunderman's opinion was based on mere speculation, not personal knowledge. *See* 889 F.3d 1239. In *Williams*, we held that a district court did not abuse its discretion when it excluded a homeowner's testimony about the value of her house because her opinion was based solely on speculation. *Id.* at 1250-51. In that case, the homeowner sued a nearby factory, alleging that the factory emitted toxic chemicals and was liable under a Florida statute that created a private right of action for those damaged by a discharge of materials in violation of Florida's environmental standards. *See id.* at 1242-44 (citing Fla. Stat. § 376.313). The

14

homeowner alleged that her property was damaged because the factory's emissions had so diminished the value of her home that it could not be sold at any price. *Id.* at 1244. The homeowner's only evidence that her house could not be sold was her own opinion testimony. *Id.* The district court excluded the homeowner's valuation testimony on the basis that it "lacked foundation and was purely speculative." *Id.* (alterations adopted) (internal quotation marks omitted).

On appeal, we affirmed the district court. We acknowledged that as a general rule a homeowner may testify about the value of her home. *Id.* at 1251. But we cautioned that when an "owner bases his estimation *solely* on speculative factors," a court may exclude the owner's testimony. *Id.* at 1250 (emphasis added). We explained that the homeowner's testimony that her home had no value was speculative because she had not tried to sell her home and had not spoken to an appraiser or real estate agent about it. *Id.* Further, she knew that some buyers were willing to purchase homes near the factory because she was aware that another home on her block had recently sold. *Id.* at 1251. Because there was no basis for the homeowner's opinion that the value of her home was zero, we concluded that her opinion was "pure speculation" and so the district court did not err in excluding her testimony. *Id.* at 1251.

This case is unlike *Williams* because Sunderman's testimony about the value of the parcel was based on her personal knowledge, not speculation. Although she

15

had no prior experience selling property encumbered by a pipeline, her opinions about what purchasers were looking for were drawn from her experience selling 25 similar lots for rural residential development. Based on her interactions with prospective purchasers, she understood that a purchaser who was buying a rural residential lot wanted to enjoy nature, have privacy, and be free from restrictions governing what she could do with her land. She applied this experience to opine that if she proceeded with the plan to subdivide the parcel into three lots, two of the lots would be unmarketable for residential development. She explained that a purchaser looking to build a house in a rural area would not buy either lot given that the pipeline cut diagonally across each lot, the permanent easement restricted how the landowner could use the area covered by the permanent easement, and Sabal Trail retained the right to enter each lot to access the pipeline. Because Sunderman's opinion was based on her personal experience and knowledge, we conclude that the district court did not abuse its discretion in allowing her to testify.

**B.    We Lack Jurisdiction to Review the District Court's Determination that Sunderman Groves Was Entitled to Attorney's Fees and Costs.**

Sabal Trail also asks us to review the district court's determination that Sunderman Groves is entitled to recover the attorney's fees and costs it incurred in defending the condemnation action. This issue implicates a difficult legal question about whether we look to state or federal law to determine what compensation is

16

owed for a condemnation under the NGA. *Compare Tenn. Gas Pipeline Co., LLC v. Permanent Easement for 7.053 Acres*, 931 F.3d 237, 241 (3d Cir. 2019) (holding that state law supplies the rule of decision), *with id.* at 255 (Chagares, J., dissenting) (arguing that federal law controls). Before we can address this question, however, we have an obligation to review *sua sponte* whether we have jurisdiction. *See Adams v. Monumental Gen. Cas. Co.*, 541 F.3d 1276, 1277 (11th Cir. 2008).

Sabal Trail argues that we have appellate jurisdiction to review the district court's determination because (1) the district court has rendered a final decision, and (2) even if no final decision has issued, we may exercise pendent appellate jurisdiction. We disagree and conclude that we lack jurisdiction.

### 1. We Lack Appellate Jurisdiction to Review the Award of Attorney's Fees and Costs Under § 1291.

We generally have jurisdiction to hear appeals taken only from a district court's "final decision[]." 28 U.S.C. § 1291.[6] "In the ordinary course a 'final decision' is one that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Ray Haluch Gravel Co. v. Cent. Pension*

---

[6] An interlocutory district court decision may be immediately appealable if the district court certifies that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Sabal Trail did not seek, and the district court did not provide, such a certification in this case.

17

*Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 571 U.S. 177, 183 (2014). We have explained that when a district court has entered an order determining that a party is liable for attorney's fees and costs but has not set the amount of the award, there is no final order on fees and costs. *See Morillo-Cedron v. Dist. Dir. for the U.S. Citizenship & Immig. Servs.*, 452 F.3d 1254, 1256 (11th Cir. 2006). Here, there is no final decision on attorney's fees or costs because the district court has determined that Sunderman Groves is entitled to recover its attorney's fees and costs but has not yet set the amount of the award. Until the district court sets the amount in an order or judgment, there is no final decision on attorney's fees and costs for us to review.

Sabal Trail nonetheless argues that under the Supreme Court's decision in *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196 (1988), it was required to appeal the award of attorney's fees and costs even though the district court had not yet set the amount of the award. We reject this argument.

In *Budinich*, an employee sued his employer for additional compensation he claimed was due under a Colorado statute, which also provided that a prevailing employee was entitled to attorney's fees. *Id.* at 197. At trial, a jury awarded the employee $5,000, which was substantially less than the amount he sought. *Id.* The employee filed motions for a new trial challenging various rulings by the district court and a motion for attorney's fees. *Id.* The district court denied the motions

18

for a new trial, determined the employee was entitled to attorney's fees under the Colorado statute, and directed the parties to make further submissions regarding the amount of attorney's fees to be awarded. *Id.* at 197-98. A few months later, the district court issued a final order setting the amount of fees. *Id.* at 198. The employee then appealed, challenging all of the district court's post-trial orders. *Id.* The Tenth Circuit dismissed the appeal as to the denial of the motions for new trial because the employee failed to file a timely appeal after the district court denied the new trial motions, but it affirmed the district court's award of fees. *See id.*

The Supreme Court granted *certiorari* to consider whether the Tenth Circuit erred in dismissing the portion of the appeal challenging the district court's decision on the merits, meaning its denial of the motions for a new trial. *See id.* The Supreme Court agreed that the Tenth Circuit lacked jurisdiction to review the denial of the new trial motions. *Id.* at 203. The Court explained that "[s]ince the Court of Appeals properly held [the employee's] notice of appeal from the decision on the merits to be untimely, and since the taking of an appeal within the prescribed time is mandatory and jurisdictional, the Court of Appeals was without jurisdiction to review the decision on the merits." *Id.* (citations omitted).

Sabal Trail characterizes *Budinich* as a case in which the plaintiff tried to appeal both merits and attorney's fees rulings, and the Tenth Circuit dismissed the entire appeal because the plaintiff failed to file a timely appeal from the final

19

judgment on the merits.  Based on this characterization, it argues that *Budinich* established a rule that a party must appeal a determination of liability for attorney's fees at the same time that it appeals the final judgment on the merits.  But a close reading of the decision in *Budinich* shows that the Supreme Court was reviewing only the Tenth Circuit's decision that it lacked jurisdiction over the appeal from the denial of the employee's new trial motions.  Because the Court in *Budinich* did not address when an appellate court has jurisdiction to review a decision that a party is liable for attorney's fees, the Court did not adopt a rule that such a decision must be appealed at the same time as the merits judgment.

Our precedent establishes that we have jurisdiction to review the district court's determination that Sabal Trail is liable for attorney's fees and costs only after the district court issues a final decision on this issue.  Because the district court has not yet set the amount of attorney's fees and costs to be awarded, we lack jurisdiction to review Sabal Trail's liability for attorney's fees and costs.

### 2.    We Cannot Exercise Pendent Jurisdiction to Review Whether Sabal Trail is Liable for Attorney's Fees and Costs.

Perhaps recognizing that there is no final decision on attorney's fees and costs conferring jurisdiction under § 1291, Sabal Trail advances an alternative argument, urging us to exercise pendent appellate jurisdiction to review this issue. Although we sometimes exercise pendent appellate jurisdiction to review an otherwise non-appealable district court decision when we have jurisdiction over

20

another issue in the case, *see Black v. Wigington*, 811 F.3d 1259, 1270 (11th Cir. 2016), we cannot do so here.

We may exercise pendent jurisdiction over the district court's determination that Sunderman Groves is entitled to attorney's fees and costs only if this issue is "'inextricably intertwined' with or 'necessary to ensure meaningful review' of the appealable issue." *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1357 (11th Cir. 2018) (quoting *Black*, 811 F.3d at 1270). To determine whether pendent appellate jurisdiction exists, then, we must identify the questions raised by the appealable and non-appealable decisions and decide whether they overlap. *See id.* at 1357-59. If there is no overlap, we may not exercise pendent appellate jurisdiction over the non-appealable decision. *See id.* at 1358-59.

Here, we may not exercise pendent appellate jurisdiction because there is no overlap between the appealable and non-appealable issues that Sabal Trail raises. The issue properly before us on appeal is an evidentiary question: whether the district court abused its discretion in allowing Sunderman, a lay witness, to offer opinion testimony about the value of the parcel after the pipeline was built. The non-appealable issue that Sabal Trail asks us to review—whether it is liable for attorney's fees and costs—turns on an entirely separate question of law: whether federal or state law supplies the rule of decision to determine the scope of compensation available for a condemnation under the NGA. Because there is no

21

overlap between the evidentiary issue and the issue of Sabal Trail's liability for attorney's fees and costs, we cannot exercise pendent appellate jurisdiction to review the latter issue.

Our decision exercising pendent appellate jurisdiction to review a party's entitlement to an undetermined amount of attorney's fees, *Andrews v. Employees' Retirement Plan of First Alabama Bancshares, Inc.*, 938 F.2d 1245, 1247–48 (11th Cir. 1991), is not to the contrary. In *Andrews*, the appealable issue was whether the district court correctly determined that under the terms of a pension plan the beneficiary entitled to a deceased man's spousal benefit payments was his widow, not his ex-wife. *See id.* at 1247 n.3. The non-appealable issue was whether the plan was liable for the widow's attorney's fees. *See id.* at 1247-48. The plan argued that it was not liable for the widow's attorney's fees because, among other reasons, the ex-wife, not the widow, was entitled to benefits under the plan. *See id.* at 1247. Because the appealable and non-appealable issues overlapped, we exercised pendent appellate jurisdiction. But here, there is no overlap between the evidentiary issue and the issue of Sabal Trail's liability for attorney's fees and costs.[7]

---

[7] *Andrews* held that the merits question of whether the widow or ex-wife was entitled to the spousal benefit payments was appealable because the district court had entered a final decision on the merits. *See* 938 F.2d at 1247 n.3. We note, though, that this question had become moot as a result of a settlement agreement between the widow and ex-wife that resolved their dispute. *See id.* at 1247. *Andrews* offered no explanation about how a moot issue could properly remain before the court. *Id.* at 1248. But *Andrews* does not help Sabal Trail because

## III.    CONCLUSION

We affirm the district court's final judgment awarding Sunderman Groves

damages and dismiss the appeal of the district court's determination that

Sunderman Groves is entitled to attorney's fees and costs.[8]

**AFFIRMED IN PART AND DISMISSED IN PART.**

---

here there is no question that the separate issue in this case—the evidentiary issue—presents a live controversy that is properly appealable.

Even assuming *Andrews* permits us to exercise pendent appellant jurisdiction absent overlap between the appealable and non-appealable issues, we would retain discretion to decide whether to exercise pendent appellate jurisdiction.  *See Hibiscus Assocs., Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys. of Detroit*, 50 F.3d 908, 922 (11th Cir. 1995).  And we would decline to exercise that discretion here.

[8] Nothing in our decision forecloses Sabal Trail from challenging the district court's determination that it is liable for attorney's fees and costs after the district court sets the final amount of fees and costs.