[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11069
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-23193-JEM


JEAN EMMANUEL DORVIL,

Plaintiff-Appellant
Cross Appellee,

versus

NATIONSTAR MORTGAGE LLC,

Defendant-Appellee
Cross Appellant.


_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(April 20, 2021)


Before NEWSOM, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

After Jean Dorvil defaulted on his home mortgage, Nationstar Mortgage LLC, his loan servicer, brought a foreclosure action against him. Nationstar and Dorvil subsequently executed a permanent loan modification plan but the state court refused to cancel the already-scheduled foreclosure sale. Following the foreclosure, Dorvil was evicted from his home and sued Nationstar for a host of issues, including wrongful foreclosure and breach of the loan modification agreements, and for emotional distress damages, punitive damages, sentimental damages, and actual damages for the full value of his property.

The district court granted summary judgment to Nationstar on some—but not all—of Dorvil's claims. A jury eventually rendered a verdict for Dorvil on his wrongful foreclosure and breach of contract claims and awarded Dorvil $182,600 in damages. The parties now cross-appeal from the district court's summary judgment order. And Dorvil appeals from the district court's order striking his testimony about the sentimental value of his property and the district court's reduction of the jury's damages award.

After careful consideration, we affirm.

## I.     BACKGROUND

### A.     Facts

In 1994, Jean Dorvil executed a $130,000 promissory note in favor of Chase Federal Bank, secured by a mortgage on his house and property in Dade County,

2

Florida.  Dorvil defaulted on the note in June 2011 and failed to make all subsequent payments.

On May 30, 2013, Nationstar, which had begun servicing Dorvil's mortgage account in October 2012, brought a foreclosure action against Dorvil in Florida state court.  In response, Dorvil admitted default and told the court he was pursuing loss mitigation.  The state court entered a consent judgment of final foreclosure in May 2014 and scheduled the foreclosure sale for July 29, 2015.

On May 8, 2015, Nationstar offered Dorvil a "Trial Period Plan" for a mortgage modification, which Dorvil accepted.  Dorvil made all the required trial payments and executed a permanent modification plan with Nationstar on July 23, 2015, six days before the scheduled foreclosure sale.  That same day, Nationstar filed a motion with the state court explaining that loss mitigation was pending and asking that the court cancel the foreclosure sale.  Then, on July 28, 2015, the day before the sale, the trial court denied Nationstar's motion to cancel the sale. Pioneer Investment Enterprises ("Pioneer") purchased Dorvil's house at the sale.

On August 13, 2015, Nationstar filed a motion to vacate the foreclosure sale in the state court, but the court denied the motion and directed that a certificate of title and writ of possession be issued to Pioneer.  A week later, on August 20, 2015, Nationstar filed an emergency motion with the state court seeking to reverse the foreclosure sale.  Nationstar asked the court to stay the issuance of the writ of

possession and rehear its motion to vacate the sale. Along with its motion, Nationstar submitted the permanent loan mitigation documents to demonstrate that loss mitigation was complete and Dorvil had satisfied the payment plan. On September 3, 2015, the state court denied Nationstar's motion and issued the certificate of title to Pioneer the next day. The court issued a writ of possession to Pioneer on September 17, 2015.

On September 25, 2015, Dorvil moved to stay the writ of possession and vacate the sale and foreclosure judgment based on the permanent loan mitigation documents he had signed with Nationstar. Once again, the state court denied Dorvil's motion. Dorvil appealed, and the Third District Court of Appeal affirmed the trial court's order in December 2016. Subsequently, Dorvil received $92,026.21 in surplus funds from the sale of his house.

## B.    Procedural History

In July 2017, after Dorvil filed this action in state court, Nationstar timely removed the suit to the U.S. District Court for the Southern District of Florida. Dorvil then amended his complaint to allege ten causes of action: (1) wrongful foreclosure; (2) breach of the trial modification plan; (3) breach of the permanent modification agreement; (4) breach of the implied covenant of good faith and fair dealing; (5) promissory estoppel; (6) negligent misrepresentation as to the trial modification plan; (7) negligent misrepresentation as to the permanent

4

modification agreement; (8) fraudulent misrepresentation as to the trial

modification plan; (9) fraudulent misrepresentation as to the permanent

modification agreement; and (10) negligence.  Dorvil requested economic,

emotional, and punitive damages.

After Dorvil's initial disclosures, Nationstar moved for summary judgment

on all the causes of action in Dorvil's amended complaint.  Relevant here,

Nationstar argued that it was entitled to judgment as a matter of law on Dorvil's

wrongful foreclosure claim because it was undisputed that Dorvil defaulted and

consented to the "consent judgment of final foreclosure."  Nationstar also argued

that it was entitled to judgment as a matter of law on Dorvil's claims for emotional

distress damages and punitive damages.  On Dorvil's economic damages claim,

Nationstar argued that the amount Dorvil sought for the difference between the

actual value of his home and what he received from the foreclosure sale was

speculative and that Dorvil's testimony as to his home's value should be excluded

because he was "unqualified because he demonstrated no 'real concept' of the

value of his property."

The district court granted summary judgment to Nationstar in part and

denied it in part.  Relevant here, it denied summary judgment on Dorvil's wrongful

foreclosure claim because, although the underlying judgment of foreclosure was a

consent judgment, Dorvil alleged that Nationstar's failure to stop the foreclosure

sale following his post-judgment acceptance of Nationstar's permanent loan modification offer amounted to wrongful foreclosure. The district court granted summary judgment to Nationstar on Dorvil's emotional distress claim because Florida's impact rule does not allow recovery for emotional distress damages without an accompanying physical injury. The district court acknowledged that under Florida law, some torts are an exception to this rule, but explained that wrongful foreclosure was not one of those exceptions. Next, the district court denied summary judgment to Nationstar on Dorvil's damages claim for the actual value of his house. The district court explained that Florida law allowed a homeowner to testify about the value of his own property even though he was not a qualified expert. The district court then noted that the admissibility of Dorvil's testimony was more properly addressed in a motion *in limine*. Finally, the district court granted summary judgment to Nationstar on Dorvil's punitive damages claim because Dorvil had not presented evidence that Nationstar had acted intentionally or with gross negligence in its efforts to stop the foreclosure sale.

At the motion *in limine* stage, Nationstar moved to preclude Dorvil from testifying at trial about, as relevant to this appeal, (1) the sentimental value of his home and (2) the actual value of his home. The district court granted Nationstar's motion in part and denied it in part. It excluded Dorvil's planned testimony about the sentimental value of his home because, in his initial disclosures, Dorvil had

6

said that he would supplement the record to provide a measure of damages but failed to do so and did not support with evidence the value he named in his interrogatory responses. Next, the district denied Nationstar's motion to exclude Dorvil's testimony about the actual value of his home, explaining that although it had "serious concerns about Dorvil's ability to lay a suitable predicate for his knowledge given his deposition testimony," it was premature to exclude his testimony without an opportunity to "lay a predicate at trial."

At trial, Dorvil testified that the value of his home at the time of the foreclosure sale was $450,000. He developed his opinion by living in the neighborhood for 10 years and based on offers he had received to buy his house, which he did not accept. Dorvil also testified that he had researched the value of his house by asking a realtor friend to perform a market analysis, speaking to other people selling their homes, and going "on the record" and finding out "what's been sold and how much it's sold for."[1] On cross-examination, Dorvil admitted that he had never had his house appraised.

After Dorvil testified, Nationstar renewed its motion to strike his testimony as speculative and the district court reserved ruling on the issue until after the jury returned a verdict. The jury returned a verdict in Dorvil's favor on the wrongful

---

[1] Dorvil did not testify about the content of the offers to buy his house or the results of the market analysis because that testimony would have been excluded as hearsay.

foreclosure and breach of the trial modification agreement claims but returned a verdict for Nationstar on Dorvil's claim for breach of the permanent modification agreement. The jury awarded Dorvil damages of $182,600.

Nationstar filed a renewed motion to strike Dorvil's damages testimony and moved for judgment as a matter of law. It argued that Dorvil's testimony as to the value of his home was speculative. The district court granted Nationstar's motion in part. It struck Dorvil's testimony about the real property value of the home but found that Dorvil had laid a proper foundation for $30,000 in damages for personal property and storage costs.

The district court entered final judgment for $30,000 in Dorvil's favor and Dorvil timely appealed, challenging the district court's: (1) grant of summary judgment to Nationstar on his emotional distress damages claim; (2) grant of summary judgment to Nationstar on his punitive damages claim, (3) order striking his testimony about the sentimental value of his property; and (4) grant of judgment as a matter of law to Nationstar as to the jury's award of damages based on Dorvil's testimony about the value of his home. Nationstar timely cross-appealed, challenging the district court's denial of its motion for summary judgment on Dorvil's wrongful foreclosure claim.[2]

---

[2] We lack jurisdiction over Nationstar's cross-appeal of the denial of its motion for summary judgment on Dorvil's wrongful foreclosure claim and dismiss it because there has been a full trial and final judgment on the merits of the wrongful foreclosure claim. *Munoz v.*

## II.    STANDARD OF REVIEW

We review a district court's grant of a summary judgment motion *de novo*, "viewing the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Grange Mut. Cas. & Ins. Co. v. Slaughter*, 958 F.3d 1050, 1056 (11th Cir. 2020) (quoting *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1299 (11th Cir. 2018)).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact and compels judgment as a matter of law.  Fed. R. Civ. P. 56(a).

We review a district court's ruling on a motion *in limine* for abuse of discretion.  *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1244 (11th Cir. 2020). "[W]hen employing an abuse-of-discretion standard, we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (*en banc*).

We review *de novo* a motion for judgment as a matter of law and apply the same standard as the district court.  *Collins v. Marriott Int'l, Inc.*, 749 F.3d 951,

---

*Oceanside Resorts, Inc.*, 223 F.3d 1340, 1344 n.3 (11th Cir. 2000) ("[O]nce a trial on the merits has occurred, . . . the denial of [a summary judgment] motion is unreviewable on appeal." (citations omitted)); *see also Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1283–84 (11th Cir. 2001).

956–57 (11th Cir. 2014).  When considering whether sufficient evidence supports a verdict, a court must "evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party."  *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995).

## III.    DISCUSSION

### A.    The district court properly granted summary judgment to Nationstar on Dorvil's claim for emotional-distress damages.

Dorvil challenges the district court's grant of summary judgment to Nationstar on his claim for emotional distress damages resulting from the alleged wrongful foreclosure, arguing that Florida's impact rule does not bar his recovery here despite his lack of a physical injury because wrongful foreclosure should be included in a narrow list of torts excluded from the impact rule.  He argues that Florida courts have not set out a "comprehensive list" of exceptions to the impact rule and that the district court erred by not considering the physical and mental stress resulting from a forced dispossession.  The district court should have concluded, Dorvil argues, that the "emotional distress and upset" from a wrongful foreclosure "are wholly unrelated to the essentially liquidated nature of the pecuniary damage associated with the loss of a house."  We disagree.

Florida's impact rule requires that "before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact."

10

*R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 362 (Fla. 1995) (quotation omitted).

The rationale for the rule is that "the existence of emotional harm is difficult to

prove, resultant damages are not easily quantified, and the precise cause of [the

emotional harm] can be elusive." *Rowell v. Holt*, 850 So. 2d 474, 478 (Fla. 2003).

Thus, Florida's impact rule prevents courts from being "inundated with litigation

based solely on psychological injury." *Id*. (citing *Gonzalez v. Metro. Dade Cnty.*

*Pub. Health Tr.*, 651 So. 2d 673, 675 (Fla. 1995).

However, the Florida Supreme Court has also said that "[e]xceptions to the

[impact] rule have been narrowly created and defined in a certain very narrow class

of cases in which the foreseeability and gravity of the emotional injury involved,

and lack of countervailing policy concerns, have surmounted the policy rationale

undergirding application of the impact rule." *Id*. Stressing the narrowness of the

class of exceptions to the rule, the Supreme Court of Florida explained:

> The impact rule does not apply to recognized intentional torts that
> result in predominantly emotional damages, including the intentional
> infliction of emotional distress, defamation, and invasion of privacy.
> While classification has not been consistent throughout our
> jurisprudence, intentional torts have been deemed exclusions from, as
> opposed to exceptions to, the impact rule. There is, however, no
> cognizable action for simple negligence resulting in psychological
> trauma, alone, unless the case fits within one of the narrow exceptions
> to the impact rule.

*Id*. at 478 n.1 (internal citations omitted). The Supreme Court of Florida has also

recognized an exception to the impact rule for wrongful birth because the

11

emotional harms stemming from the tort were "an additional 'parasitic' consequence of conduct that itself is a freestanding tort apart from any emotional injury." *Id.* at 478–79 (quoting *Kush v. Lloyd*, 616 So. 2d 415, 422 (Fla. 1992)); *see also Tanner v. Hartog*, 696 So. 2d 705, 708 (Fla. 1997).

Dorvil asks us to expand this narrow class of exceptions to Florida's impact rule to include wrongful foreclosure. But he does not cite any Florida caselaw finding that the harms stemming from wrongful foreclosure result in predominantly emotional damages, as do the other exceptions to the impact rule. *See G4S Secure Sols. USA, Inc. v. Golzar*, 208 So. 3d 204, 208 (Fla. 3d Dist. Ct. App. 2016) (explaining that the only exceptions to the impact rule the Florida Supreme Court has recognized are "certain torts [that] are necessarily devoid of physical harm and are of such a nature that the only foreseeable damages resulting from those torts are emotional damages that are non-economic in nature."). Thus, we decline to adopt a new rule of state law without supporting authority and we affirm the district court's grant of summary judgment to Nationstar on Dorvil's emotional distress claim.

## B.    The district court properly granted summary judgment to Nationstar on Dorvil's punitive damages claim.

Dorvil argues that the district court should not have granted summary judgment to Nationstar on his claim for punitive damages based on his wrongful foreclosure claim because the jury should have decided whether Nationstar acted

12

intentionally or with gross negligence.  Dorvil also alleges that the district court "completely ignored the undisputed facts" and should have found that the actions of Nationstar's attorneys and representatives were grossly negligent.  We disagree.

Under Florida law, punitive damages may only be imposed on a corporation based on employee conduct if, based on clear and convincing evidence, the employee was guilty of intentional misconduct or gross negligence and (1) the corporation "actively and knowingly participated in such conduct;" (2) "[t]he officers, directors, or managers" of the corporation "knowingly condoned, ratified, or consented to such conduct;" or (3) the corporation "engaged in conduct that constituted gross negligence and contributed to the loss, damages, or injury suffered by the claimant."  Fla. Stat. § 768.72(3).  Florida law defines intentional misconduct to mean that "the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage."  *Id*. § 768.72(2)(a).  Gross negligence "means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct."  *Id*. § 768.72(2)(b).

The district court found that Dorvil had not established either intentional misconduct or gross negligence by clear and convincing evidence because

13

"[Nationstar] did not simply ignore [Dorvil] and actually took several actions in an effort to save [his] home, albeit a little too late."  Additionally, the district court found that Dorvil had not presented any evidence of malicious intent or gross negligence; rather, he wished the court to infer it "based solely upon the actions of [Nationstar's] attorney."  We agree.  On appeal, Dorvil does not point to evidence in the record that creates a genuine dispute of material fact as to whether Nationstar acted intentionally or with gross negligence.  Instead, he points to instances where Nationstar told Dorvil it was taking action to remedy the situation or stop the foreclosure sale and argues that, because Nationstar was unsuccessful in its efforts, there was sufficient evidence for a jury to consider the question.  But asking us to infer intentional misconduct or gross negligence based on these facts alone is not enough to create a genuine dispute of material fact.  Thus, we affirm the district court's grant of summary judgment to Nationstar on Dorvil's punitive damages claim.

## C.    The district court properly struck Dorvil's testimony about the sentimental value of his home as speculative.

Dorvil appeals the district court's order granting in part Nationstar's motion *in limine* to strike his testimony about the sentimental value of his home.  He argues that despite his failure to state an amount he sought for sentimental damages in his initial disclosures and his failure to supplement the record to indicate the amount of damages he sought ($200,000–$300,000, a twenty-fold increase from

14

his initial estimate of the value of his property at $14,632.32), any prejudice to Nationstar that might have resulted was harmless.  The district court found that Dorvil failed to timely supplement his initial disclosures as required by Federal Rule of Civil Procedure 26(e)[3] and that he subsequently failed to provide a justification for his delay.  In reaching this conclusion, the district court relied on cases applying Federal Rule of Civil Procedure 37(c)(1),[4] which bars parties from using at trial any evidence that they should have provided or supplemented under Rule 26(a) or (e).  Because the district court applied the correct legal standard and did not make a clear error of judgment, we affirm.

---

[3]  Federal Rule of Civil Procedure 26(e)(1) requires that:

A party who has made a disclosure under Rule 26(a)--or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

[4]  The text of Federal Rule of Civil Procedure 37(c)(1) says, in relevant part:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

**D.    The district court properly granted judgment as a matter of law to Nationstar as to the amount of damages awarded for Dorvil's home.**

Dorvil next argues that the district court should not have stricken his testimony about the actual value of his home or found that his testimony was legally insufficient to support the damages awarded by the jury. The district court found that Dorvil's testimony should be excluded because he provided no objective evidence that the jury could use to assess his testimony: he was unable to provide any non-hearsay evidence, provided no comparative valuations, and presented no evidence of the "essential characteristics of comparative neighborhood properties." Thus, the district court concluded, Dorvil's testimony was "mere speculation and legally insufficient to support the jury's damages award." We agree.

Although it is true that under Florida law "an owner may offer an opinion of the value of his . . . own property," his opinion "must be based upon a competent foundation." *J.L.C. v. State*, 189 So. 3d 260, 261 (Fla. 2d Dist. Ct. App. 2016). Florida courts have found that an owner's opinion was not based on a competent foundation in cases where the owner provided more objective evidence than Dorvil. For example, in *Bekins Van Lines v. Schaeffer*, 630 So. 2d 633, 635 (Fla. 4th Dist. Ct. App. 1994), a Florida appellate court found that a homeowner's "telephone and personal conversations" with others were insufficient to allow her to testify about the value of her home. And in *Williams v. Mosaic Fertilizer, LLC*,

16

889 F.3d 1239, 1250–51 (11th Cir. 2018), we applied Florida law and found that a homeowner's testimony as to the value of her home was speculative when she had not tried to sell her home or consulted a real estate agent or had an appraisal.

In contrast, in *Sabal Trail Commission, LLC v. 3.921 Acres of Land in Lake County Florida*, 947 F.3d 1362, 1369 (11th Cir. 2020), we affirmed the admission of value testimony by a homeowner when it was based on the homeowner's opinions about the value of certain home features to buyers and the homeowner had developed those opinions from her personal experience "selling 25 similar lots for rural residential development." In that case, the homeowner testified that she would be unable to sell her plot unencumbered by a pipeline because, based on her interactions with prospective purchasers, she knew that if she proceeded with her plan to subdivide her plot into three lots, two of them would be unmarketable for residential development given that the pipeline cut diagonally across two lots, preventing prospective purchasers from using the land covering the pipeline to develop the property in a desirable manner. *Id*. at 1369–70.

Dorvil argues that his testimony is distinguishable from the testimony in *Bekins* and meets the standard set out in *Williams* because he conducted market research and had received prior comparable offers to purchase his house. Dorvil's assertion does not alter the issue: Dorvil did not provide any objective evidence of his market research for the jury to understand the basis for his opinion of his

17

home's value and conclude whether it was accurate.[5]  Dorvil also argues that his testimony is like the landowner's testimony in *Sabal Trail Commission* because his "knowledge was based on actual occurrences, not on unfounded speculation," and therefore it should be admissible.  Unlike the landowner's testimony in *Sabal Trail Commission*, which was specific, detailed, and contained objective reference points that the jury could gauge to assess whether her value opinion was accurate, Dorvil's testimony gave no specifics and provided no quantifiable or observable basis for his opinion.  Even drawing all reasonable inferences in Dorvil's favor, there is insufficient evidence of the value of his home based solely on his speculative opinion to support the jury's original damages award.  Accordingly, we affirm the district court.

\*     \*     \*

For these reasons, we affirm.

**AFFIRMED.**

---

[5]  Similarly, Dorvil provided no objective information about the unaccepted offers.  But, even if he had, they are not admissible to prove value under Florida law.  *Trailer Ranch, Inc. v. Levine*, 523 So. 2d 629, 632 (Fla. 4th Dist. Ct. App. 1988).

18