[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-11986

Non-Argument Calendar

_____

TANNER CORLEY,

Plaintiff-Appellant,

*versus*

MERCEDES-BENZ U.S. INTERNATIONAL, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 7:19-cv-01400-LSC

_____

Before JORDAN, NEWSOM, and EDMONDSON, Circuit Judges.

PER CURIAM:

Plaintiff Tanner Corley appeals the district court's grant of summary judgment in favor of his former employer, Mercedes-Benz U.S. International, Inc. ("MBUSI"). In this civil action, Plaintiff asserted claims for race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981. No reversible error has been shown; we affirm.[1]

**I.**

Plaintiff (a white male) was employed at MBUSI's vehicle manufacturing plant in Vance, Alabama. Plaintiff worked as a "Team Member" on the vehicle assembly line. On 25 June 2019, Plaintiff was working in Zone 4 and noticed several vehicles coming from Zone 3 that had incorrect parts installed. Plaintiff reported the observed defects to his team leader.

---

[1] Plaintiff also seeks to challenge the district court's taxation of costs against him. We lack jurisdiction to consider this issue because no final order on costs is before us on appeal; the district court's order determined Plaintiff was liable for costs but made no final determination about the amount of costs owed. *See Sabal Trail Transmission, LLC v. 3.921 Acres of Land*, 947 F.3d 1362, 1370-71 (11th Cir. 2020) ("Because the district court has not yet set the amount of attorney's fees and costs to be awarded, we lack jurisdiction to review [plaintiff's] liability for attorney's fees and costs.").

Shortly thereafter, Darryl Holley, a Team Member from Zone 3 who is black, approached Plaintiff's work area. Holley made a "smart comment" to Plaintiff. In response, Plaintiff said something to this effect: "I didn't know y'all can read" or "can y'all not read the broadcast sheet."[2] Holley found Plaintiff's comment racially offensive because black people were not "allowed to read back in the day." Holley reported the incident to his supervisor, who then reported the incident to Human Resources ("HR").

Following an investigation of the 25 June incident, two HR managers concluded that Plaintiff's statement was racially offensive and determined that termination of Plaintiff's employment was appropriate. MBUSI then terminated Plaintiff's employment for violating MBUSI's policies prohibiting abusive and insulting language.

In August 2019, Plaintiff filed this civil action. At the close of discovery, MBUSI moved for summary judgment. The district court granted summary judgment in favor of MBUSI. Plaintiff now appeals.

## II.

On appeal, Plaintiff challenges the district court's grant of summary judgment in favor of MBUSI. Plaintiff also contends that the district court abused its discretion in making these rulings

---

[2] The broadcast sheets provide instructions to assembly-line workers about what parts to put on the vehicle.

about discovery: (1) granting MBUSI's motion for a protective order, and (2) denying Plaintiff's motion to compel disclosure of a document.

## A.  Discovery Issues

We review a district court's ruling on a discovery matter under an abuse-of-discretion standard.  *See Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014).  Under this standard, "we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard."  *Id.*  The district court's discovery ruling will not be overturned unless it "resulted in substantial harm to the appellant's case."  *Id.*

Plaintiff first contends that the district court abused its discretion in granting MBUSI's motion for a protective order barring Plaintiff from deposing MBUSI's president.  In the challenged order, the district court granted MBUSI's motion "for the reasons stated on the record" at the 29 October 2020 hearing.  Plaintiff, however, never ordered a transcript of the 29 October hearing.  Because the district court's stated reasons for granting MBUSI's motion have not been made a part of the record on appeal, we can conduct no meaningful appellate review of that ruling.  *See Pensacola Motor Sales, Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1224 (11th Cir. 2012) ("Under the 'absence equals affirmance' rule, 'the burden is on the appellant to ensure the record on appeal is complete, and where a failure to discharge that burden prevents us

from reviewing the district court's decision we ordinarily will affirm the judgment.").

Plaintiff next challenges the district court's denial of Plaintiff's motion to compel production of a document. In his motion, Plaintiff said his team leader (Stewart) provided a written statement to HR about the 25 June incident. Plaintiff alleged that MBUSI failed to produce that document during discovery. When Plaintiff asked MBUSI about the written statement, MBUSI responded that, "[t]o MBUSI's knowledge there is and was no such document."

The district court abused no discretion in denying Plaintiff's motion to compel. Plaintiff produced no evidence indicating that MBUSI's statement (that MBUSI had no knowledge of the requested document) was unworthy of credence. And -- as the district court explained -- the court "cannot order Defendant to produce a document that it does not possess."

Moreover, Plaintiff cannot show that he suffered "substantial harm" as a result of the district court's ruling. To the extent the requested document did exist, it would have been cumulative of other evidence in the record, including Stewart's deposition testimony about the events surrounding the 25 June incident. Further, Stewart's written statement -- a statement focused on the 25 June incident, not on MBUSI's later decision to terminate Plaintiff's employment -- would have had little or no bearing on whether Plaintiff was terminated because of his race.

B.  Summary Judgment

We review *de novo* a district court's grant of summary judgment, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party.  *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263-64 (11th Cir. 2010).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Under Title VII, it is unlawful for an employer to discriminate against an employee "because of" his race.  *See* 42 U.S.C. § 2000e-2(a)(1).  Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts.  *See* 42 U.S.C. § 1981; *Johnson v. Ry. Express Agency*, 421 U.S. 454, 459-60 (1975).  Claims for race discrimination under both Title VII and section 1981 "have the same requirements of proof and use the same analytical framework."  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).  Plaintiff bears the ultimate burden of proving -- by a preponderance of the evidence -- that MBUSI discriminated unlawfully against him.  *See Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008).

We have recognized that claims for unlawful discrimination may be evaluated using different legal theories, including a "single-motive" theory and a "mixed-motive" theory.  *See Quigg v. Thomas Cty. Sch. Dist.*, 814 F.3d 1227, 1235-36, n.4 (11th Cir. 2016).  Under the single-motive theory, an employee succeeds by showing

that unlawful animus "was the true reason for the adverse action." *Id.* at 1235. Under a mixed-motive theory, a plaintiff alleging race discrimination must demonstrate that his race "was a motivating factor for an adverse employment action, even though other factors also motivated the action." *Id.* at 1235 (quotations omitted).

Generally speaking,[3] we evaluate single-motive claims involving circumstantial evidence under the burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Alvarez*, 610 F.3d at 1264. Under this framework, the plaintiff must first establish a *prima facie* case of discrimination, which creates a presumption of unlawful discrimination against the employee. *Id.* The employer may then rebut that presumption with legitimate, nondiscriminatory reasons for the adverse employment acts. *Id.* The burden then shifts to the employee to produce evidence sufficient to create a genuine issue of material fact that the employer's articulated reasons are a pretext for unlawful discrimination. *Id.*

---

[3] A plaintiff may also prevail under the single-motive theory outside of the *McDonnell Douglas* framework by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). Plaintiff raised no argument under the "convincing mosaic" theory in the district court, so that argument is not properly before us. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court.").

In reviewing a Title VII claim for discrimination, "our sole concern is whether unlawful discriminatory animus motivated the decision." *Id.* at 1266 (quotations and alteration omitted). We stress that "[w]e do not sit as a super-personnel department, and it is not our role to second-guess the wisdom of an employer's business decisions -- indeed the wisdom of them is irrelevant -- as long as those decisions were not made with a discriminatory motive." *Id.* (quotation marks omitted). In other words, "[a]n employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Id.* (citation and alteration omitted).

Here, the district court determined reasonably that Plaintiff's race-discrimination claim constituted a single-motive claim involving circumstantial evidence. The district court thus applied properly the *McDonnell Douglas* burden-shifting framework.[4]

---

[4] We reject Plaintiff's argument that the *McDonnell Douglas* burden-shifting framework is no longer applicable in the light of the Supreme Court's recent decision in *Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020). In *Bostock*, the Supreme Court concluded that discrimination against an employee for being homosexual or transgender constituted discrimination based on sex in violation of Title VII. *See* 140 S. Ct. at 1737, 1744. The Supreme Court recognized that claims for employment discrimination under Title VII may be proven either by showing that a protected trait was "a motivating factor" in the employer's adverse employment decision or by applying the "traditional but-for causation standard." *Id.* at 1739-40. We do not read *Bostock* as overruling *McDonnell Douglas* or as establishing a new test for evaluating Title VII discrimination claims. And this Court has continued to apply the *McDonnell*

The district court committed no error in concluding that Plaintiff failed to establish a *prima facie* case of discrimination and also failed to demonstrate pretext.

To establish a *prima facie* case of discrimination, a plaintiff must establish that he (1) belongs to a protected class, (2) was subjected to an adverse employment action, (3) was qualified to perform the pertinent job; and (4) was treated less favorably by his employer than "similarly situated" employees outside the protected class. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (*en banc*). That Plaintiff satisfied the first three elements is undisputed.

To satisfy the similarly-situated element, a plaintiff must show that he and his comparators are "similarly situated in all material respects." *Id.* at 1226. Whether a comparator meets this standard is determined "on a case-by-case basis, in the context of individual circumstances." *Id.* at 1227. A "similarly situated" comparator is an employee who "engaged in the same basic conduct (or misconduct) as the plaintiff;" was "subject to the same employment policy, guideline, or rule;" had the same supervisor; and who "share[d] the plaintiff's employment or disciplinary history." *Id.* at 1227-28.

In support of his race-discrimination claims, Plaintiff identified two purported comparators: Diaz and Holley. The record

*Douglas* burden-shifting framework to employment discrimination claims post-*Bostock*. *See, e.g., Jenkins v. Nell*, 26 F.4th 1243 (11th Cir. 2022).

supports the district court's determination that neither of these two comparators were "similarly situated in all material respects" to Plaintiff.  Plaintiff's first comparator (Diaz) was a supervisor and, thus, had different job responsibilities and a different supervisor than Plaintiff.  Moreover, neither of Plaintiff's proposed comparators had made a racially offensive comment to a co-worker or shared the same disciplinary history as Plaintiff.  Plaintiff has thus identified no similarly-situated comparator who was treated more favorably than he was; the district court concluded properly that Plaintiff failed to establish a *prima facie* case of race discrimination.[5]

Even if Plaintiff could make out a *prima facie* case, MBUSI offered a legitimate, non-discriminatory reason for terminating Plaintiff's employment: Plaintiff's violation of MBUSI's policies on abusive and insulting language.  The burden then shifted back to Plaintiff to demonstrate "that the reasons given by the employer were not the real reasons for the adverse employment decision." *See Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*).  When -- as in this case -- the employer's "proffered reason is one that might motivate a reasonable employer, an

---

[5] On appeal, Plaintiff raises new arguments supporting his position that Holley is a proper comparator, including (1) that Holley made a racial comment about a co-worker's wife, and (2) that Holley made race-based comments about Plaintiff.  Because Plaintiff never raised these arguments before the district court, these arguments are not properly before us on appeal. *See Access Now, Inc.*, 395 F.3d at 1331.

employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *See id*. at 1030.

Plaintiff has failed to satisfy his burden of showing pretext. Instead of meeting MBUSI's proffered reason "head on and rebut[ting] it," Plaintiff contends that no showing of pretext is necessary. Because Plaintiff has made no argument that MBUSI's stated reason is a pretext for discrimination, he cannot prevail under the *McDonnell Douglas* framework.

To the extent Plaintiff raised adequately a mixed-motive claim for race discrimination, the district court concluded properly that Plaintiff failed to show that Plaintiff's race was "a motivating factor" in MBUSI's decision to terminate Plaintiff's employment. As evidence of race discrimination, Plaintiff argues chiefly that his statement to Holley was "race-neutral" and was considered racially offensive only because Plaintiff was white and Holley was black. Plaintiff also challenges the adequacy of MBUSI's investigation of the 25 June incident, arguing that MBUSI failed to consider properly Plaintiff's intent and failed to consider that other black MBUSI employees did not interpret Plaintiff's statement as racially offensive.

Plaintiff's arguments, however, merely challenge the correctness of MBUSI's determination that Plaintiff's statement was racially offensive and violated MBUSI's abusive-and-insulting language policy. Even if MBUSI's determination was erroneous, that error does not demonstrate that MBUSI's decision to terminate

Plaintiff's employment was motivated by race discrimination. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct.").

We also reject Plaintiff's contention that the district court failed to consider adequately a statement made by MBUSI's in-house counsel (Nichols) advising Plaintiff to "get a lawyer." Plaintiff says this statement was a party admission under Fed. R. Evid. 801(d)(2): a rule dealing with hearsay exceptions. The district court, however, did not exclude Nichols's statement as impermissible hearsay. And -- even if Nichols's statement could be construed as an admission of wrongdoing -- the statement does not support a reasonable inference that MBUSI's decision to terminate Plaintiff's employment was motivated by Plaintiff's race.

Viewing the record in the light most favorable to Plaintiff, Plaintiff has failed to present evidence sufficient to support a reasonable inference that MBUSI's decision to terminate Plaintiff's employment was motivated by unlawful race discrimination. We affirm the district court's grant of summary judgment in favor of MBUSI.

AFFIRMED.